# CITY OF LITTLETON, COLORADO *v.* Z. J. GIFTS D-4, L. L. C., DBA CHRISTAL'S

No. 02–1609.   Argued March 24, 2004—Decided June 7, 2004

*J. Andrew Nathan* argued the cause for petitioner. With him on the briefs were *Heidi J. Hugdahl, Scott D. Bergthold, Larry W. Berkowitz,* and *Brad D. Bailey.*

*Douglas R. Cole,* State Solicitor of Ohio, argued the cause and filed a brief for the State of Ohio et al. as *amici curiae*

in support of petitioner under this Court's Rule 12.6. With him on the brief were *Jim Petro,* Attorney General of Ohio, *Rebecca L. Thomas,* Assistant Solicitor, and *Dan Schweitzer,* and the Attorneys General for their respective States as follows: *William H. Pryor, Jr.,* of Alabama, *Ken Salazar* of Colorado, *M. Jane Brady* of Delaware, *Mark J. Bennett* of Hawaii, *Steve Carter* of Indiana, *Thomas J. Miller* of Iowa, *Thomas F. Reilly* of Massachusetts, *Jeremiah W. (Jay) Nixon* of Missouri, *W. A. Drew Edmondson* of Oklahoma, *Hardy Myers* of Oregon, *Paul G. Summers* of Tennessee, *Greg Abbott* of Texas, *Mark L. Shurtleff* of Utah, and *William H. Sorrell* of Vermont.

*Michael W. Gross* argued the cause for respondent. With him on the brief were *Arthur M. Schwartz* and *Cindy D. Schwartz.**

JUSTICE BREYER delivered the opinion of the Court.

In this case we examine a city's "adult business" licensing ordinance to determine whether it meets the First Amendment's requirement that such a licensing scheme assure prompt judicial review of an administrative decision denying a license. See *FW/PBS, Inc.* v. *Dallas,* 493 U. S. 215 (1990); cf. *Freedman* v. *Maryland,* 380 U. S. 51 (1965). We conclude that the ordinance before us, considered on its face, is consistent with the First Amendment's demands.

I

Littleton, Colorado, has enacted an "adult business" ordinance that requires an "adult bookstore, adult novelty store

---

*Briefs of *amici curiae* urging reversal were filed for the Community Defense Counsel by *David R. Langdon* and *Benjamin W. Bull;* and for the National League of Cities et al. by *Richard Ruda* and *Charles A. Rothfeld.*

Briefs of *amici curiae* urging affirmance were filed for the American Booksellers Foundation for Free Expression et al. by *Michael A. Bamberger;* and for the First Amendment Lawyers Association by *H. Louis Sirkin.*

or adult video store" to have an "adult business license." Littleton City Code §§ 3–14–2, 3–14–4 (2003), App. to Brief for Petitioner 13a–20a, 23a. The ordinance defines "adult business"; it requires an applicant to provide certain basic information about the business; it insists upon compliance with local "adult business" (and other) zoning rules; it lists eight specific circumstances the presence of which requires the city to deny a license; and it sets forth time limits (typically amounting to about 40 days) within which city officials must reach a final licensing decision. §§ 3–14–2, 3–14–3, 3–14–5, 3–14–7, 3–14–8, *id.*, at 13a–30a. The ordinance adds that the final decision may be "appealed to the [state] district court pursuant to Colorado rules of civil procedure 106(a)(4)." § 3–14–8(B)(3), *id.*, at 30a.

In 1999, the respondent, a company called Z. J. Gifts D–4, L. L. C. (hereinafter ZJ), opened a store that sells "adult books" in a place not zoned for adult businesses. Compare Tr. of Oral Arg. 13 (store "within 500 feet of a church and day care center") with § 3–14–3(B), App. to Brief for Petitioner 21a (forbidding adult businesses at such locations). Instead of applying for an adult business license, ZJ brought this lawsuit attacking Littleton's ordinance as unconstitutional on its face. The Federal District Court rejected ZJ's claims; but on appeal the Court of Appeals for the Tenth Circuit accepted two of them, 311 F. 3d 1220, 1224 (2002). The court held that Colorado law "does not assure that [the city's] license decisions will be given expedited [judicial] review"; hence it does not assure the "prompt final judicial *decision*" that the Constitution demands. *Id.*, at 1238. It also held unconstitutional another ordinance provision (not now before us) on the ground that it threatened lengthy administrative delay—a problem that the city believes it has cured by amending the ordinance. Compare *id.*, at 1233–1234, with § 3–14–7, App. to Brief for Petitioner 27a–28a, and Brief for Petitioner 3. Throughout these proceedings, ZJ's store has continued to operate.

The city has asked this Court to review the Tenth Circuit's "judicial review" determination, and we granted certiorari in light of lower court uncertainty on this issue. Compare, e. g., 311 F. 3d, at 1238 (First Amendment requires prompt judicial *determination* of license denial); *Nightclubs, Inc.* v. *Paducah*, 202 F. 3d 884, 892–893 (CA6 2000) (same); *Baby Tam & Co.* v. *Las Vegas*, 154 F. 3d 1097, 1101–1102 (CA9 1998) (same); *11126 Baltimore Blvd., Inc.* v. *Prince George's County*, 58 F. 3d 988, 998–1001 (CA4 1995) (en banc) (same), with *Boss Capital, Inc.* v. *Casselberry*, 187 F. 3d 1251, 1256–1257 (CA11 1999) (Constitution requires only prompt *access* to courts); *TK's Video, Inc.* v. *Denton County*, 24 F. 3d 705, 709 (CA5 1994) (same); see also *Thomas* v. *Chicago Park Dist.*, 534 U. S. 316, 325–326 (2002) (noting a Circuit split); *City News & Novelty, Inc.* v. *Waukesha*, 531 U. S. 278, 281 (2001) (same).

## II

The city of Littleton's claims rest essentially upon two arguments. First, this Court, in applying the First Amendment's procedural requirements to an "adult business" licensing scheme in *FW/PBS*, found that the First Amendment required such a scheme to provide an applicant with *"prompt access"* to judicial review of an administrative denial of the license, but that the First Amendment did not require assurance of a "prompt judicial *determination*" of the applicant's legal claim. Second, in any event, Colorado law satisfies any "prompt judicial determination" requirement. We reject the first argument, but we accept the second.

## A

The city's claim that its licensing scheme need not provide a "prompt judicial determination" of an applicant's legal claim rests upon its reading of two of this Court's cases, *Freedman* and *FW/PBS*. In *Freedman*, the Court considered the First Amendment's application to a "motion picture

censorship statute"—a statute that required an "'owner or lessee'" of a film, prior to exhibiting a film, to submit the film to the Maryland State Board of Censors and obtain its approval. 380 U. S., at 52, and n. 1 (quoting Maryland statute). It said, "a noncriminal process which requires the prior submission of a film to a censor avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship system." *Id.*, at 58. The Court added that those safeguards must include (1) strict time limits leading to a speedy administrative decision and minimizing any "prior restraint"-type effects, (2) burden of proof rules favoring speech, and (3) (using language relevant here) a "procedure" that will "*assure a prompt final judicial decision,* to minimize the deterrent effect of an interim and possibly erroneous denial of a license." *Id.*, at 58–59 (emphasis added).

In *FW/PBS*, the Court considered the First Amendment's application to a city ordinance that "regulates sexually oriented businesses through a scheme incorporating zoning, licensing, and inspections." 493 U. S., at 220–221. A Court majority held that the ordinance violated the First Amendment because it did not impose strict administrative time limits of the kind described in *Freedman.* In doing so, three Members of the Court wrote that "the full procedural protections set forth in *Freedman* are not required," but that nonetheless such a licensing scheme must comply with *Freedman*'s "core policy"—including (1) strict administrative time limits and (2) (using language somewhat different from *Freedman*'s) "*the possibility of prompt judicial review in the event that the license is erroneously denied.*" 493 U. S., at 228 (opinion of O'CONNOR, J.) (emphasis added). Three other Members of the Court wrote that all *Freedman*'s safeguards should apply, including *Freedman*'s requirement that "a prompt judicial determination must be available." 493 U. S., at 239 (Brennan, J., concurring in judgment). Three Members of the Court wrote in dissent that *Freedman*'s re-

quirements did not apply at all. See 493 U. S., at 244–245 (White, J., joined by REHNQUIST, C. J., concurring in part and dissenting in part); *id.*, at 250 (SCALIA, J., concurring in part and dissenting in part).

The city points to the differing linguistic descriptions of the "judicial review" requirement set forth in these opinions. It concedes that *Freedman,* in listing constitutionally necessary "safeguards," spoke of the need to assure a "prompt final judicial decision." 380 U. S., at 59. But it adds that JUSTICE O'CONNOR's controlling plurality opinion in *FW/ PBS* did not use the word "decision," instead speaking only of the *"possibility of prompt judicial review."* 493 U. S., at 228 (emphasis added); see also *id.*, at 229 ("an avenue for prompt judicial review"); *id.*, at 230 ("availability of prompt judicial review"). This difference in language between *Freedman* and *FW/PBS,* says the city, makes a major difference: The First Amendment, as applied to an "adult business" licensing scheme, demands only an assurance of speedy access to the courts, not an assurance of a speedy court decision.

In our view, however, the city's argument makes too much of too little. While JUSTICE O'CONNOR's *FW/PBS* plurality opinion makes clear that only *Freedman*'s "core" requirements apply in the context of "adult business" licensing schemes, it does not purport radically to alter the nature of those "core" requirements. To the contrary, the opinion, immediately prior to its reference to the "judicial review" safeguard, says:

> "The core policy underlying *Freedman* is that the license for a First Amendment-protected business must be issued within a reasonable period of time, because undue delay results in the unconstitutional suppression of protected speech. Thus, the first two *[Freedman]* safeguards are essential . . . ." 493 U. S., at 228.

These words, pointing out that *Freedman's* "judicial review" safeguard is meant to prevent "undue delay," 493 U. S., at 228, include *judicial,* as well as *administrative,* delay. A delay in issuing a judicial decision, no less than a delay in obtaining access to a court, can prevent a license from being "issued within a reasonable period of time." *Ibid.* Nothing in the opinion suggests the contrary. Thus we read that opinion's reference to "prompt judicial review," together with the similar reference in Justice Brennan's separate opinion (joined by two other Justices), see *id.,* at 239, as encompassing a prompt judicial decision. And we reject the city's arguments to the contrary.

### B

We find the second argument more convincing. In effect that argument concedes the constitutional importance of assuring a "prompt" judicial decision. It concedes as well that the Court, illustrating what it meant by "prompt" in *Freedman,* there set forth a "model" that involved a "hearing one day after joinder of issue" and a "decision within two days after termination of the hearing." 380 U. S., at 60. But the city says that here the First Amendment nonetheless does not require it to impose 2- or 3-day time limits; the First Amendment does not require special "adult business" judicial review rules; and the First Amendment does not insist that Littleton write detailed judicial review rules into the ordinance itself. In sum, Colorado's ordinary "judicial review" rules offer adequate assurance, not only that *access* to the courts can be promptly obtained, but also that a judicial *decision* will be promptly forthcoming.

Littleton, in effect, argues that we should modify *FW/PBS,* withdrawing its implication that *Freedman's* special judicial review rules apply in this case. And we accept that argument. In our view, Colorado's ordinary judicial review procedures suffice as long as the courts remain sensitive to the need to prevent First Amendment harms and administer

those procedures accordingly. And whether the courts do so is a matter normally fit for case-by-case determination rather than a facial challenge. We reach this conclusion for several reasons.

First, ordinary court procedural rules and practices, in Colorado as elsewhere, provide reviewing courts with judicial tools sufficient to avoid delay-related First Amendment harm. Indeed, where necessary, courts may arrange their schedules to "accelerate" proceedings. Colo. Rule Civ. Proc. 106(a)(4)(VIII) (2003). And higher courts may quickly review adverse lower court decisions. See, e. g., *Goebel* v. *Colorado Dept. of Institutions*, 764 P. 2d 785, 792 (Colo. 1988) (en banc) (granting "expedited review").

Second, we have no reason to doubt the willingness of Colorado's judges to exercise these powers wisely so as to avoid serious threats of delay-induced First Amendment harm. We presume that courts are aware of the constitutional need to avoid "undue delay result[ing] in the unconstitutional suppression of protected speech." *FW/PBS, supra,* at 228; see also, e. g., *Schlesinger* v. *Councilman,* 420 U. S. 738, 756 (1975). There is no evidence before us of any special Colorado court-related problem in this respect. And were there some such problems, federal remedies would provide an additional safety valve. See Rev. Stat. § 1979, 42 U. S. C. § 1983.

Third, the typical First Amendment harm at issue here differs from that at issue in *Freedman,* diminishing the need in the typical case for special procedural rules imposing special 2- or 3-day decisionmaking time limits. *Freedman* considered a Maryland statute that created a Board of Censors, which had to decide whether a film was "'pornographic,'" tended to "'debase or corrupt morals,'" and lacked "'whatever other merits.'" 380 U. S., at 52–53, n. 2 (quoting Maryland statute). If so, it denied the permit and the film could not be shown. Thus, in *Freedman,* the Court considered a scheme with rather subjective standards and where a denial likely meant complete censorship.

In contrast, the ordinance at issue here does not seek to *censor* material. And its licensing scheme applies reasonably objective, nondiscretionary criteria unrelated to the content of the expressive materials that an adult business may sell or display. The ordinance says that an adult business license *"shall"* be denied if the applicant (1) is underage; (2) provides false information; (3) has within the prior year had an adult business license revoked or suspended; (4) has operated an adult business determined to be a state law "public nuisance" within the prior year; (5) (if a corporation) is not authorized to do business in the State; (6) has not timely paid taxes, fees, fines, or penalties; (7) has not obtained a sales tax license (for which zoning compliance is required, see Tr. of Oral Arg. 16–17); or (8) has been convicted of certain crimes within the prior five years. § 3–14–8(A), App. to Brief for Petitioner 28a–29a (emphasis added).

These objective criteria are simple enough to apply and their application simple enough to review that their use is unlikely in practice to suppress totally the presence of any specific item of adult material in the Littleton community. Some license applicants will satisfy the criteria even if others do not; hence the community will likely contain outlets that sell protected adult material. A supplier of that material should be able to find outlets; a potential buyer should be able to find a seller. Nor should zoning requirements suppress that material, for a constitutional zoning system seeks to determine *where,* not *whether,* protected adult material can be sold. See *Renton* v. *Playtime Theatres, Inc.,* 475 U. S. 41, 46 (1986). The upshot is that Littleton's "adult business" licensing scheme does "not present the grave 'dangers of a censorship system.'" *FW/PBS,* 493 U. S., at 228 (opinion of O'CONNOR, J.) (quoting *Freedman, supra,* at 58). And the simple objective nature of the licensing criteria means that in the ordinary case, judicial review, too, should prove simple, hence expeditious. Where that is not so— where, for example, censorship of material, as well as delay

in opening an additional outlet, is improperly threatened—the courts are able to act to prevent that harm.

Fourth, nothing in *FW/PBS* or in *Freedman* requires a city or a State to place judicial review safeguards all in the city ordinance that sets forth a licensing scheme. *Freedman* itself said: "How or whether Maryland is to incorporate the required procedural safeguards in the statutory scheme is, of course, for the State to decide." 380 U. S., at 60. This statement is not surprising given the fact that many cities and towns lack the state-law legal authority to impose deadlines on state courts.

These four sets of considerations, taken together, indicate that Colorado's ordinary rules of judicial review are adequate—at least for purposes of this facial challenge to the ordinance. Where (as here and as in *FW/PBS*) the regulation simply conditions the operation of an adult business on compliance with neutral and nondiscretionary criteria, cf. *post,* at 785 (STEVENS, J., concurring in part and concurring in judgment), and does not seek to censor content, an adult business is not entitled to an unusually speedy judicial decision of the *Freedman* type. Colorado's rules provide for a flexible system of review in which judges can reach a decision promptly in the ordinary case, while using their judicial power to prevent significant harm to First Amendment interests where circumstances require. Of course, those denied licenses in the future remain free to raise special problems of undue delay in individual cases as the ordinance is applied.

For these reasons, the judgment of the Tenth Circuit is

*Reversed.*

JUSTICE STEVENS, concurring in part and concurring in the judgment.

There is an important difference between an ordinance conditioning the operation of a business on compliance with certain neutral criteria, on the one hand, and an ordinance

conditioning the exhibition of a motion picture on the consent of a censor. The former is an aspect of the routine operation of a municipal government. The latter is a species of content-based prior restraint. Cf. *Graff* v. *Chicago*, 9 F. 3d 1309, 1330–1333 (CA7 1993) (Flaum, J., concurring).

The First Amendment is, of course, implicated whenever a city requires a bookstore, a newsstand, a theater, or an adult business to obtain a license before it can begin to operate. For that reason, as JUSTICE O'CONNOR explained in her plurality opinion in *FW/PBS, Inc.* v. *Dallas*, 493 U. S. 215, 226 (1990), a licensing scheme for businesses that engage in First Amendment activity must be accompanied by adequate procedural safeguards to avert "the possibility that constitutionally protected speech will be suppressed." But JUSTICE O'CONNOR's opinion also recognized that the full complement of safeguards that are necessary in cases that "present the grave 'dangers of a censorship system'" are "not required" in the ordinary adult-business licensing scheme. *Id.*, at 228 (quoting *Freedman* v. *Maryland*, 380 U. S. 51, 58 (1965)). In both contexts, "undue delay results in the unconstitutional suppression of protected speech," 493 U. S., at 228, and *FW/PBS* therefore requires both that the licensing decision be made promptly and that there be "the possibility of prompt judicial review in the event that the license is erroneously denied," *ibid.* But application of neutral licensing criteria is a "ministerial action" that regulates speech, rather than an exercise of discretionary judgment that prohibits speech. *Id.*, at 229. The decision to deny a license for failure to comply with these neutral criteria is therefore not subject to the presumption of invalidity that attaches to the "direct censorship of particular expressive material." *Ibid.* JUSTICE O'CONNOR's opinion accordingly declined to require that the licensor, like the censor, either bear the burden of going to court to effect the denial of a license or otherwise assume responsibility for ensuring

a prompt judicial determination of the validity of its decision. *Ibid.*

The Court today reinterprets *FW/PBS*'s references to "*'the possibility of prompt judicial review'*" as the equivalent of *Freedman*'s "'prompt' judicial decision" requirement. *Ante,* at 780–781. I fear that this misinterpretation of *FW/ PBS* may invite other, more serious misinterpretations with respect to the content of that requirement. As the Court applies it in this case, assurance of a "'prompt' judicial decision" means little more than assurance of the *possibility* of a prompt decision—the same possibility of promptness that is available whenever a person files suit subject to "ordinary court procedural rules and practices." *Ante,* at 781–782. That possibility will generally be sufficient to guard against the risk of undue delay in obtaining a remedy for the erroneous application of neutral licensing criteria. But the mere possibility of promptness is emphatically insufficient to guard against the dangers of unjustified suppression of speech presented by a censorship system of the type at issue in *Freedman,* and is certainly not what *Freedman* meant by "'prompt' judicial decision."

JUSTICE O'CONNOR's opinion in *FW/PBS* recognized that differences between ordinary licensing schemes and censorship systems warrant imposition of different procedural protections, including different requirements with respect to which party must assume the burden of taking the case to court, as well as the risk of judicial delay. I would adhere to the views there expressed, and thus do not join Part II–A of the Court's opinion. I do, however, join the Court's judgment and Parts I and II–B of its opinion.

JUSTICE SOUTER, with whom JUSTICE KENNEDY joins, concurring in part and concurring in the judgment.

I join the Court's opinion, except for Part II–B. I agree that this scheme is unlike full-blown censorship, *ante,* at 782–784, so that the ordinance does not need a strict timetable of

the kind required by *Freedman* v. *Maryland*, 380 U. S. 51 (1965), to survive a facial challenge. I write separately to emphasize that the state procedures that make a prompt judicial determination possible need to align with a state judicial practice that provides a prompt disposition in the state courts. The emphasis matters, because although Littleton's ordinance is not as suspect as censorship, neither is it as innocuous as common zoning. It is a licensing scheme triggered by the content of expressive materials to be sold. See *Los Angeles* v. *Alameda Books, Inc.*, 535 U. S. 425, 448 (2002) (KENNEDY, J., concurring in judgment) ("These ordinances are content based, and we should call them so"); *id.*, at 455–457 (SOUTER, J., dissenting). Because the sellers may be unpopular with local authorities, there is a risk of delay in the licensing and review process. If there is evidence of foot dragging, immediate judicial intervention will be required, and judicial oversight or review at any stage of the proceedings must be expeditious.

JUSTICE SCALIA, concurring in the judgment.

Were the respondent engaged in activity protected by the First Amendment, I would agree with the Court's disposition of the question presented by the facts of this case (though not with all of the Court's reasoning). Such activity, when subjected to a general permit requirement unrelated to censorship of content, has no special claim to priority in the judicial process. The notion that media corporations have constitutional entitlement to accelerated judicial review of the denial of zoning variances is absurd.

I do not believe, however, that Z. J. Gifts is engaged in activity protected by the First Amendment. I adhere to the view I expressed in *FW/PBS, Inc.* v. *Dallas*, 493 U. S. 215, 250 (1990) (opinion concurring in part and dissenting in part): the pandering of sex is not protected by the First Amendment. "The Constitution does not require a State or municipality to permit a business that intentionally specializes in,

and holds itself forth to the public as specializing in, performance or portrayal of sex acts, sexual organs in a state of arousal, or live human nudity." *Id.*, at 258. This represents the Nation's long understanding of the First Amendment, recognized and adopted by this Court's opinion in *Ginzburg* v. *United States,* 383 U. S. 463, 470–471 (1966). Littleton's ordinance targets sex-pandering businesses, see Littleton City Code § 3–14–2 (2003); to the extent it could apply to constitutionally protected expression its excess is not so great as to render it substantially overbroad and thus subject to facial invalidation, see *FW/PBS,* 493 U. S., at 261–262. Since the city of Littleton "could constitutionally have proscribed the commercial activities that it chose instead to license, I do not think the details of its licensing scheme had to comply with First Amendment standards." *Id.*, at 253.