OPINION
{¶ 1} Defendants-appellants, WFO Corporation and Jane Doe, appeal the decision in the Warren County Court of Common Pleas granting summary judgment in favor of plaintiffs-appellees, the city of Monroe, City Council of Monroe, Chief of Police Ernie Howard, and Enforcement Officer Jay Stewart.[1] We affirm.
 {¶ 2} On May 23, 2000, the city of Monroe enacted an ordinance that requires sexually-oriented businesses and sexually-oriented business employees within the city limits to have sexually-oriented business and sexually-oriented business employee licenses. See Monroe Emergency Ordinance 2000-19. WFO Corporation owns and operates Bristol's, a strip club which features nude and semi-nude entertainment and dance. Jane Doe is a dancer who performs at the club.
 {¶ 3} On August 23, 2000, the city initiated the present action, a declaratory judgment action against appellants seeking a judicial determination regarding the constitutionality of the city's sexually-oriented business licensing ordinance.[2] The case was removed to federal district court. The city amended a portion of the ordinance on August 28, 2000 and again on November 14, 2000.
 {¶ 4} In August 2001, the United States District Court for the Southern District of Ohio remanded the action to the Warren County Court of Common Pleas to give the state court the opportunity to construe the municipal ordinance. Both parties moved for summary judgment in October 2002. While the motions were pending, the city amended the ordinance a third time on December 10, 2002. The common pleas court considered the ordinance, as amended three times over, and upheld its constitutional validity. The court granted summary judgment in favor of the city.
 {¶ 5} Appellants now appeal the decision. In a sole assignment of error, they contend the trial court erred when it granted summary judgment. Appellants argue specifically three issues: the ordinance 1) improperly fails to provide prompt judicial resolution regarding adverse licensing decisions; 2) contains invalid civil disability provisions that excludes individuals with specifically enumerated crimes from holding sexually-oriented business employee licenses; and 3) violates applicants' privacy rights by requiring they disclose personal information on applications that may be subject to public release.
 {¶ 6} Civ. R. 56(C) provides in part that summary judgment shall be rendered where 1) there is no genuine issue as to any material fact; 2) the moving party is entitled to judgment as a matter of law; and 3) reasonable minds can come to only one conclusion, and that conclusion is adverse to the party against whom the motion is made, who is entitled to have the evidence construed most strongly in its favor. Harless v. WillisDay Warehousing Co. (1978), 54 Ohio St.2d 64, 66. An appellate court's standard of review on appeal from a summary judgment is de novo. Burgessv. Tackas (1998), 125 Ohio App.3d 294, 296.
 {¶ 7} Appellants first argue that a licensing ordinance which fails to provide for a prompt judicial decision regarding adverse licensing decisions violates the First Amendment and is unconstitutional. Appellants rely on FW/PBS, Inc. v. City of Dallas (1990), 493 U.S. 215,110 S.Ct. 596, in which the United States Supreme Court examined the First Amendment's application to a city ordinance that regulated sexually-oriented businesses through a scheme that incorporated zoning, licensing, and inspections.
 {¶ 8} In FW/PBS, the Court held that in order to prevent unconstitutional suppression of protected speech, two safeguards were essential in these types of ordinances: "the licensor must make the decision whether to issue the license within a specified and reasonable time period during which the status quo is maintained, and there must be the possibility of prompt judicial review in the event that the license is erroneously denied." Id. at 228. FW/PBS followed the "core policy" articulated in Freedman v. Maryland (1965), 380 U.S. 51, 85 S.Ct. 734, in which the court invalidated a statute that required an owner or lessee of a film to submit it to the state censor board prior to exhibition for lack of procedural safeguards to prevent the dangers of a censorship system. FW/PBS, 493 U.S. at 228.
 {¶ 9} The United States Supreme Court, however, modified FW/PBS in its recent decision City of Littleton, Colorado v. Z.J. Gifts D-4, L.L.C.
(2004), 541 U.S. 774, 124 S.Ct. 2219. In Z.J. Gifts, the Court found that "Colorado's ordinary judicial review procedures suffice [as a procedural safeguard] as long as the courts remain sensitive to the need to prevent First Amendment harms and administer those procedures accordingly." Id. at ___, 124 S.Ct. at 2224. The Court explained that the licensing scheme applied reasonably objective, nondiscretionary criteria unrelated to content. An adult business is not entitled to an unusually speedy judicial decision where "the regulation simply conditions the operation * * * on compliance with neutral and nondiscretionary criteria, * * * and does not seek to censor content." Id. at ___, 124 S.Ct. at 2226.
 {¶ 10} Here, Monroe designed a licensing ordinance that addressed the judicial review concern. The ordinance provides similarly objective, nondiscretionary criteria unrelated to the content of the expression like the Littleton ordinance. According to the Monroe ordinance, a license shall issue unless one or more of the following is found: 1) applicant is underage; 2) applicant is delinquent in payment of city taxes, fees, fines or penalties assessed against or imposed upon applicant in relation to a sexually-oriented business; 3) applicant fails to disclose required information on application; 4) application fee has not been paid; 5) proposed sexually-oriented business is located in improper zoning district; or 6) applicant has been convicted of or pled guilty or no contest to certain crimes within the prior five years. The ordinance's simple, objective nature of the licensing criteria should allow for simple, hence expeditious, judicial review. See Z.J. Gifts,
541 U.S. at ___, 124 S.Ct. at 2225-2226.
 {¶ 11} Additionally, any delay-related, First Amendment harm is mitigated by ordinance provisions requiring the city to issue a provisional license to any applicant or licensee who initiates a judicial action to appeal an adverse decision concerning a denied license application or a suspended or revoked license. This provisional license allows a sexually-oriented business or employee to continue operation or employment until the court rules on the merits of a party's claims therefore maintaining the status quo. We find that the city ordinance and Ohio's judicial process provides adequate assurance of prompt judicial review of adverse licensing decisions as required by the First Amendment.
 {¶ 12} Appellants also argue that the civil disability provisions of the ordinance effectuate an unconstitutional prior restraint on expression. This argument is without merit.
 {¶ 13} The civil disability provisions allow the city to deny the issuance of a sexually-oriented adult business license or employee license when the applicant has been convicted, pled guilty, or pled no contest to specifically enumerated sex offenses. Applicants must wait two years for a license if convicted of specified misdemeanor offenses and five years for felony offenses. Enumerated offenses include sexual crimes against children, sexual abuse, rape, and crimes connected with another sexually-oriented business.
 {¶ 14} Appellants' argument that the ordinance constitutes a prior restraint is misplaced. "A `prior restraint' exists when speech is conditioned upon the prior approval of public officials," and such system carries a heavy presumption against its validity. Nightclubs, Inc. v.City of Paducah, Kentucky (C.A.6, 2000), 202 F.3d 884, 889. The Sixth Circuit Court of Appeals addressed a similarly misapplied challenge to an ordinance's civil disabilities provision by explaining that prior restraint concerns are more appropriately argued under the prompt judicial review analysis. See Deja Vu of Nashville, Inc. v. Metro Govt.of Nashville and Davidson Cty. (C.A.6, 2001), 274 F.3d 377, 391-392.
 {¶ 15} Consistent with the Sixth Circuit's approach, we find that appellants are "actually, though obliquely," challenging that the ordinance is content-based and therefore must withstand the court's application of strict scrutiny to determine whether the ordinance is constitutional. Id. at 391. The ordinance's purpose, however, is not directed toward regulating the content of expression, but rather redressing the secondary effects of sexually-oriented businesses. The city found that the presence of sexuallyoriented business is often accompanied by unlawful sexual activities, prostitution, pandering of obscenity, crime, health concerns, and a decrease of property values. As such, we find the ordinance to be content-neutral.
 {¶ 16} Content neutral regulations will be reviewed by this court under intermediate level scrutiny. The United States Supreme Court first articulated this level of constitutional review in United States v.O'Brien (1968), 391 U.S. 367, 377, 88 S.Ct. 1673 (statute prohibiting destruction of selective service card was constitutionally valid because it furthered substantial government interest by appropriately narrow means).
 {¶ 17} In order to withstand intermediate level scrutiny as described in O'Brien, 1) the ordinance must be validly enacted within the city's constitutional power; 2) the ordinance must further a substantial governmental interest; 3) the interest must be unrelated to the suppression of speech; and 4) the ordinance may pose only an incidental burden on First Amendment freedoms that is no greater than is essential to further the governmental interest. Deja Vu, 274 F.3d at 391-392
(citing East Brooks Books, Inc. v. City of Memphis [C.A.6, 1995],48 F.3d 220, 226).
 {¶ 18} There is little doubt that the first three prongs of O'Brien
are easily satisfied. First, appellants do not challenge whether the ordinance was validly enacted. Second, Monroe's stated interests in promoting health, safety, morals, and general welfare of the city and local businesses are substantial. See City of Erie v. Pap's A.M. (2000),529 U.S. 277, 120 S.Ct. 1382 (city ordinance proscribing nudity in public places satisfied O'Brien test). Third, as discussed previously, the ordinance is unrelated to the suppression of erotic speech. It is content neutral because Monroe seeks to address the secondary effects of the sex industry. See City of Renton v. Playtime Theatres, Inc. (1986),475 U.S. 41, 46-47, 106 S.Ct. 925 (zoning ordinance regulating adult theaters was constitutionally valid). Therefore, we now analyze whether the ordinance's civil disability provisions constitute merely an incidental burden on appellants' First Amendment rights that is essential to furthering the city's interests.
 {¶ 19} Here, the ordinance's civil disabilities provisions serve to deny licenses to those applicants that pose the highest risk of engaging in the type of criminal behavior that the ordinance seeks to redress. However, the ordinance does not provide for a permanent prohibition. An applicant will be denied a license if the applicant has been convicted of or pled guilty or no contest to a misdemeanor sex offense or a felony sex crime within two or five years respectively. In light of these two and five-year prohibitions and narrow reach to the specified unqualified individuals, we find these provisions pass constitutional muster.
 {¶ 20} Appellants' third argument is that ordinances that require applicants to disclose personal information on application forms cause an unconstitutional chilling effect on expression. The ordinance requires applicants to provide their full, true names; current mailing address; and fingerprints to conduct the necessary background check. The disclosure provisions, like the civil disability provisions in our earlier discussion, are not content-based regulations and thus, are subject to intermediate level scrutiny.
 {¶ 21} Again, using the O'Brien test, the ordinance easily satisfies the first three prongs. Appellants do not challenge whether the ordinance was validly enacted. Second, Monroe has a legitimate interest in requiring this information as a means to facilitate necessary criminal background checks regarding crimes of a sexual nature. See Deja Vu,274 F.3d at 393. Third, the purpose of these provisions is unrelated to the suppression of expression. The collection of this information serves as an important means to determine whether a license can issue in compliance with the ordinance's civil disability provisions, thereby assisting Monroe's interest in eradicating the secondary effects of sexually-oriented businesses. See id.
 {¶ 22} Our analysis now turns to the final prong of the O'Brien test, namely whether the provisions requiring the personal information pose a merely incidental burden on appellants' First Amendment rights that is essential to furthering the city's interests. Appellants argue that requiring such information will result in a loss of privacy and produce a subsequent chilling effect. We disagree. The amended ordinance requires applicants to provide a minimal amount of information. Notably, the amended ordinance does not even require applicants to disclose a residential address or social security number. However, the disclosure is necessary to properly effectuate the civil disability provisions of the ordinance. Accordingly, we find the ordinance's disclosure provisions to be constitutionally sound.
 {¶ 23} Furthermore, we find discussion of whether such information is subject to public release pursuant to Ohio's Public Records Law, R.C.149.43, not properly before the court at this time.
 {¶ 24} The trial court did nor err when it granted summary judgment in favor of appellees. The city was entitled to declaratory judgment that the ordinance is constitutional as a matter of law. Appellants' assignment of error is overruled.
 {¶ 25} Judgment affirmed.
Young, P.J., and Powell, J., concur.
[1] Plaintiffs-appellees shall be referred to hereinafter collectively as the city.
[2] On August 17, 2000, appellants sought declaratory judgment and injunctive relief in the United States District Court for the Southern District of Ohio, contending that the ordinance violated their constitutional rights. However, because of pending civil and criminal proceedings in state court, the United States District Court for the Southern District of Ohio invoked the abstention doctrine of Younger v.Harris (1971), 401 U.S. 37, 91 S.Ct. 746, staying proceedings in that case.