ILLINOIS ONE NEWS, INC., doing
business as The Gift Spot,
Plaintiff–Appellant,

v.

CITY OF MARSHALL, ILLINOIS,
Defendant–Appellee.

No. 06–1828.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 17, 2006.

Decided Feb. 13, 2007.

Roger B. Webber (argued), Brett N. Olmstead, Beckett & Webber, Urbana, IL, for Plaintiff–Appellant.

Ronald S. Cope (argued), Ungaretti & Harris, Chicago, IL, Richard J. Bernardoni, Meehling & Bernardoni, Marshall, IL, for Defendant–Appellee.

Before EASTERBROOK, Chief Judge, and BAUER and FLAUM, Circuit Judges.

EASTERBROOK, Chief Judge.

The City of Marshall, Illinois, is a small municipality located near Interstate 70 about 18 miles southwest of Terre Haute, Indiana. It is small in both population (some 3,700 people call it home) and extent (3.2 square miles). It is the county seat of Clark County, an agricultural area of 505 square miles comprising about 17,000 persons.

Property owners face few restrictions on what they can build and operate in the County's unincorporated areas. Marshall, however, has an elaborate zoning code for its 3.2 square miles, and Illinois One News does not like that code one bit. For Illinois One News ("Illinois One" for short) operates "The Gift Spot," an adult book and video store that features 15 booths for private viewing, and Marshall's zoning code requires such establishments to be at least 1,000 feet from any school, church, daycare center, or public park. Because Marshall is so small, a 1,000–foot–distance rule puts most of the city off-limits to adult enterprises. Illinois One had an opportunity to seek a permit that would allow its outlet to continue operating what is now a non-conforming use; deeming such an application futile, Illinois One filed a federal suit under 42 U.S.C. § 1983 and argues that the ordinance violates the first amendment (applied to the states by the fourteenth).

About 12% of the City's area is open to adult uses under the zoning code. The district court found that 94.1 acres, or 4.1% of the City's area, could be devoted to

adult uses if Illinois One were to keep 1,000 feet from any residential zone as well. 2006 WL 449018 at *11, 2006 U.S. Dist. LEXIS 9570 at *28 (S.D.Ill. Feb. 22, 2006). (Illinois One fears, reasonably so given the City's stated objectives, that if it relocates The Gift Spot within 1,000 feet of a residence, the City will just amend its code to send it packing again.) The locations where Marshall allows adult businesses to operate are unattractive to Illinois One—not because they are garbage dumps or otherwise undesirable physically, but because they are on the south side of town and thus some distance from the nearest exit to Interstate 70. Highway traffic is the principal source of The Gift Spot's business.

■ The Supreme Court has held that state and local governments may regulate adult businesses to curtail the secondary effects of their operations but not to restrict speech of which local residents disapprove. See *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986); *Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 122 S.Ct. 1728, 152 L.Ed.2d 670 (2002). See also, e.g., *R.V.S., L.L.C. v. Rockford*, 361 F.3d 402 (7th Cir.2004); *Andy's Restaurant & Lounge, Inc. v. Gary*, 466 F.3d 550 (7th Cir.2006). The district court concluded after a bench trial that (a) Marshall's zoning law is designed to address the business's secondary effects rather than the content of the materials it offers for sale, and (b) the secondary effects (such as higher crime rates near adult businesses) are real rather than imagined or pretextual. Illinois One does not contend that these findings of fact are clearly erroneous. (It does argue as if we could make an independent decision, but that's not an appellate court's job after a trial has been held. See Fed. R.Civ.P. 52(a).)

■ Illinois One's principal contention is that 4% of the City is just not enough. *Playtime Theatres* and *Alameda Books* say that regulation justified by secondary effects is permissible only if adequate avenues of communication remain open. An inconveniently located 4% is not "adequate," Illinois One insists.

Although *Playtime Theatres* and *Alameda Books* conclude that an adult-oriented business is entitled to "adequate" opportunities to sell its wares, neither decision holds that those opportunities must be in the same jurisdiction. The fourteenth amendment directs its commands to the states; how any given state slices up responsibilities among subdivisions normally is of no federal concern. See *Whalen v. United States*, 445 U.S. 684, 689 n. 4, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980); *Mayor of Philadelphia v. Educational Equality League*, 415 U.S. 605, 615 n. 13, 94 S.Ct. 1323, 39 L.Ed.2d 630 (1974); *Highland Farms Dairy, Inc. v. Agnew*, 300 U.S. 608, 612, 57 S.Ct. 549, 81 L.Ed. 835 (1937); *Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210, 225, 29 S.Ct. 67, 53 L.Ed. 150 (1908); *Dreyer v. Illinois*, 187 U.S. 71, 84, 23 S.Ct. 28, 47 L.Ed. 79 (1902); *Chicago Observer, Inc. v. Chicago*, 929 F.2d 325, 328 (7th Cir.1991).

If the State of Illinois were to designate Marshall as a bedroom community and surrounding land as the location for adult businesses, manufacturing plants, and grain silos, what would be the constitutional objection? *Illinois* would have satisfied *its* obligation to ensure that time, place, and manner regulations leave ample opportunities for speech. A constitutional doctrine expressed in terms of municipal rather than state boundaries could not have any long-term effect. If we were to hold that 4% of the land at the southern end of Marshall is too little, the City could annex some currently unincorporated land

on the north and offer that instead as a site for adult businesses. But if land to the north of the City's current border would supply a constitutionally adequate venue for speech if the City extended its border by half a mile or so, why is the same parcel a constitutionally inadequate venue when it is outside the City's border? The constitutional rule is that a person have adequate opportunity to speak, not that the land be in one polity (the City of Marshall) rather than another (Clark County).

When the municipal jurisdiction is large, a regulatory system that forces the speaker to go elsewhere may leave inadequate options to reach the intended audience. Chicago, for example, covers 234 square miles, and closing all of that territory to adult bookstores would not leave businesses with an adequate opportunity to reach the millions of people who work and play inside Chicago's city limits. Anchorage, Alaska, is substantially larger, at 1,961 square miles; relegating all adult businesses to areas where only moose and bears would be available as patrons could not satisfy the first amendment. A zoning system that excludes all adult businesses also could cause problems if other nearby jurisdictions adopted the same rule; when each points to the other as the "right" place for adult entertainment, the upshot may be that all locations are closed. The NIMBY syndrome ("not in my back yard") may end up meaning not in *anyone's* back yard. This may be why several Justices (and particularly Justice Blackmun in concurrence) expressed skepticism in *Schad v. Mt. Ephraim,* 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981), about an argument that a borough in New Jersey could treat Philadelphia, Pennsylvania, as the "adequate" venue for adult entertainment. In this case, however, the district court found that there is plenty of available land adjacent to the City of Marshall; we do not have a situation in which neighboring jurisdictions enact mirror-image rules in an effort by each to move adult businesses to the other.

*Schad* reserved judgment on this subject, however, and since then at least one court of appeals has expressed sympathy for the argument that a small community might insist that adult business remove to outside its borders. See *Boss Capital, Inc. v. Casselberry,* 187 F.3d 1251 (11th Cir.1999). Large cities such as Chicago can insist that adult businesses stay away from residential areas and schools, while leaving plenty of land for their operation. But if it is constitutional for Chicago to insist that these businesses move a mile or two to find a suitable spot, why can't Marshall insist that The Gift Spot move a few hundred yards? The answer "because Marshall is so small that even a short move will place us outside its borders" falls flat. Suppose all county seats in rural Illinois were two miles square (four square miles), while equivalent cities in Indiana were six miles square (36 square miles). Could it be that the Constitution would allow Indiana's cities to establish 2,000 foot (or 5,000 foot) buffer zones between residential areas and adult businesses, while Illinois's cities could not have more than 200 feet of separation? That's the gist of Illinois One's argument, and it makes little sense given that the same first amendment applies in both Illinois and Indiana.

Like the court in *Boss Capital,* however, we need not reach closure on this subject, for we agree with the district court's conclusion that land available in Marshall itself supplies an adequate alternative. No business has a constitutional right to be adjacent to the ramp of an Interstate highway. (Anyway, if proximity to Interstate 70 is Illinois One's prime objective, it can relocate without legal hindrance, and closer to the highway than it is now, on unin-

corporated land north of the City.) Whether the available land is 25%, 12%, 4%, or even 1% of Marshall's surface area does not matter: all The Gift Spot wants is two acres (which provides space for parking as well as the store). That much land it can have, and to spare. The need to subdivide any parcel it buys—for Illinois One does not want to devote 20 or 40 acres to the store and so will sell what it does not use (or ask the seller to subdivide and keep all but two acres of the original parcel)—could be an obstacle if the City readily could block an effort to carve two acres out of a larger parcel. (The need to subdivide is reinforced by the zoning ordinance's application of the 1,000–foot separation rule to parcel boundaries rather than the building located on a given parcel.)

The City has demonstrated both a desire to kick The Gift Spot out of town and a willingness to take legal steps that raise its cost of doing business. A prospect that the City would stall or block subdivision through the use of discretionary powers would render that land unavailable as a practical matter. Yet at oral argument Illinois One conceded that the subdivision process is not discretionary, and our review of the City's ordinances confirms this assessment. Once a property owner has taken the prescribed steps, "the [city] council shall approve the final plat within 60 days". Marshall Ordinances § 74–57(a)(3). Illinois One must do what any developer of vacant land must do: put in (or pay someone else to install) utility connections, sidewalks, and the like. It would have to do the same if it built outside the City; so would the proprietor of a convenience store or filling station. The first amendment does not relieve bookstore owners of those expenses that business and residential owners alike must bear.

Remaining arguments are makeweights. Illinois One contends, for example, that the zoning ordinance is unconstitutionally vague because the definition of "adult bookstore" contains the word "substantial." ("[A]n establishment having a substantial or significant portion of its stock in trade" displaying or describing "specified anatomical areas" or "specified sexual activities"—themselves defined terms.) Illinois One sensibly concedes, however, that The Gift Spot is an "adult" establishment by any possible definition. The vagueness argument therefore is advanced on behalf of third parties, who might be confused even though Illinois One knows full well that it is covered. Arguments on behalf of third parties are permissible, however, only when they cannot fend for themselves, see *Kowalski v. Tesmer*, 543 U.S. 125, 125 S.Ct. 564, 160 L.Ed.2d 519 (2004), or the statute is so ambulatory that it really offers no notice at all and therefore is not susceptible to a more precise definition by a state court—for the state rather than the federal judiciary ultimately fleshes out the meaning of state and local enactments.

Adult establishments are not children and can take care of themselves; the "helpless stranger" category does not apply. Marshall's ordinance does not fit the latter category either; the law is full of descriptive material enabling most proprietors to classify most outlets accurately. It is all but impossible to write a law or regulation without some qualitative words such as "substantial," and these do not automatically prevent enforcement. See *Thomas v. Chicago Park District*, 534 U.S. 316, 122 S.Ct. 775, 151 L.Ed.2d 783 (2002); *Second City Music, Inc. v. Chicago*, 333 F.3d 846 (7th Cir.2003). If a law making it a crime to mail a firearm "capable of being concealed on the person" is clear enough to be enforced, even though people come in many sizes and wear clothing with different capacity to conceal, see *United States v. Powell*, 423 U.S. 87, 96 S.Ct. 316, 46

L.Ed.2d 228 (1975), the use of "substantial" does not make a definition intolerably vague. *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 61, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), holds that the phrase "characterized by an emphasis"—certainly no more precise than "substantial"—supplies a core of meaning that the state judiciary may make more concrete. That knocks out any possibility of third-party standing. And we know from *Littleton v. Z.J. Gifts D–4, L.L.C.,* 541 U.S. 774, 124 S.Ct. 2219, 159 L.Ed.2d 84 (2004), that state and local laws cannot be condemned as prior restraints just because it may take a few weeks for state courts to interpret the ordinance.

Illinois One's other arguments have been considered but do not require discussion. The judgment is affirmed.