COLE, Circuit Judge,
dissenting.
The majority spends the bulk of its time tearing down Big Dipper’s arguments on the constitutionality of Warren’s geographic restrictions on sexually oriented businesses. But the beaches of Normandy lie elsewhere: the prior restraint analysis. For, as applied here, Warren’s licensing scheme functioned as a prior restraint that did not provide for “prompt judicial review.” See Odle v. Decatur Cnty., 421 F.3d 386, 389-90 (6th Cir.2005). As such, Warren’s scheme was unconstitutional and could not be used to reject Big Dipper’s application.
The majority finds Big Dipper’s prompt-judicial-review argument waived. However, the majority’s waiver analysis is misguided. As the majority admits, Big Dipper made its prior restraint argument— including claiming it did not receive prompt judicial review — in its motion for summary judgment before the district court, and again before us. Specifically, Big Dipper noted that “the decision whether to issue a license must be made within a specified, brief time period ... and [ ] there must be assurance that a judicial decision, if sought by an applicant, can be obtained seasonably.” (Big Dipper’s Motion for Summary Judgment on Liability, *723 Dist. Ct. Docket No. 32, at 28-29.) It then argued that the “letter of intent to deny must apprise the applicant of his right to a hearing before the Administrative Hearing board within 20 days ... [, and flailing the delivery of a timely letter of intent to deny, the ordinance itself states that the applicant is deemed to have met all conditions of licensure,” but that Warren failed to provide such review. (Id. at 29.) Big Dipper repeated this argument before us. (See Big Dipper Br. 56-63.)
The fact that Big Dipper made its argument in its initial motion for summary judgment and preserved that argument here renders Barany-Snyder — the case on which the majority relies — and the waiver cases cited therein inapposite, for they deal with arguments that a party has not raised below, has raised below only in reply briefs, or has mentioned before the court of appeals merely “in the most skeletal way, leaving the court to ... put flesh on its bones,” McPherson v. Kelsey, 125 F.3d 989, 996 (6th Cir.1997) (internal quotation mark omitted) (ellipses in original). See Barany-Snyder v. Weiner, 539 F.3d 327, 331 (6th Cir.2008). These circumstances are a far cry from this case. Big Dipper’s prompt-judicial-review argument is not waived.
Turning to the merits, I note first that a licensing scheme like Warren’s, which requires approval before sexually oriented speech may take place, constitutes a prior restraint, and is presumptively unconstitutional. See Bronco’s Entm’t, Ltd. v. Charter Twp. of Van Burén, 421 F.3d 440, 444 (6th Cir.2005). Such a scheme survives constitutional attack only if it at least preserves the status quo and ensures “prompt judicial review.” Odie, 421 F.3d at 389-90. I agree with the majority that Warren adequately preserved the status quo. The question is whether Warren provided Big Dipper with “prompt judicial review.”
Promptness is required for both the time taken to approve or deny the license and the period between the denial and review of that decision. Bronco’s Entm’t, 421 F.3d at 444, 448. The first of these two is not problematic here, for Warren denied Big Dipper’s application only twenty-four days after its submission, and courts have found even longer delays constitutional. See City of Littleton v. Z.J. Gifts D-4, L.L.C, 541 U.S. 774, 778, 781, 124 S.Ct. 2219, 159 L.Ed.2d 84 (2004) (finding forty days not to be too long); Bronco’s Entm’t, 421 F.3d at 448 (finding forty-four days not to be too long).
The second promptness requirement, however, poses much greater problems for Warren. The license denial letter sent to Big Dipper did not indicate the specific reason for the denial — stating only that the application was “defective and not the proper application” — and did not apprise Big Dipper of the ability to appeal the denial.[1] (See First Denial Letter, Dist. Ct. Docket No. 59-10 (Ex. H).) Under Warren’s ordinances, however:
[w]hen the city clerk issues a written notice of intent to deny ... a license, ... [t]he notice shall specify the location and the date, not less than ten (10) days nor more than twenty (20) days after the date the notice is issued, on which the hearing officer shall conduct a hearing on the city clerk’s intent to deny ... the license.
... The hearing shall take no longer than two (2) consecutive days, unless extended at the request of the respon *724 dent.... The hearing officer shall issue a written decision ... to the parties within five (5) days after the hearing. Either party may appeal such decision to a court of competent jurisdiction.
(City of Warren Code of Ordinances, Ordinance 80-621, art. X, § 6-299(a), Dist. Ct. Docket No. 59-7 (Ex. E).) And Warren’s justification for rejecting the application is immaterial, for whether the application fell short due to notarization, proper location, or otherwise, a denial is a denial. The point of review is to ascertain whether the reason for the denial was proper.
Warren’s codified review procedure ensures “prompt judicial review” in theory, so Big Dipper’s facial attack on the scheme must fail. But Warren ignored this procedure here, and the constitutionality of sexually-oriented-business licensing depends on “an assurance that a judicial decision [reviewing the license denial], if sought by the applicant, can be obtained seasonably.” Bronco’s Entm’t, 421 F.3d at 444. In Bronco’s Entertainment, we found municipal provision of two levels of judicial review, each coupled with a public hearing, along with subsequent court review of the ultimate decision, to be adequate to ensure prompt judicial review. Id. at 446-47; see also Richland Bookmart, Inc. v. Knox Cnty., 555 F.3d 512, 533 (6th Cir.2009) (finding prompt judicial review satisfied by several levels of immediate review of a licensing decision); Odie, 421 F.3d at 390-91 (same). By contrast, we have found the possibility of discretionary judicial review insufficient to constitute “prompt judicial review.” See Deja Vu of Nashville, Inc. v. Metro. Gov’t of Nashville and Davidson Cnty., 274 F.3d 377, 401 (6th Cir.2001).
The circumstances here are even more egregious than those in Deja Vu given the utter lack of direct judicial review (until the separate filing of this case), let alone prompt and non-discretionary review. Meanwhile, in stark contrast to the case law, the majority finds no need for “prompt judicial review” because of the twenty-month period between the license denial and Big Dipper filing suit. Yet, as shown above, the relevant “judicial review” in the prior-restraint context is not simply the filing of suit in federal court, but an administrative structure that a city must have in place and then use. See Richland Bookmart, 555 F.3d at 533; Bronco’s Entm’t, 421 F.3d at 446-47; Odie, 421 F.3d at 390-91; Deja Vu of Nashville, 274 F.3d at 401. And the Supreme Court has indicated that “the burden of instituting judicial proceedings and proving that expression is unprotected” falls on the city, not the license seeker. Deja Vu of Nashville, 274 F.3d at 400 (citing Freedman v. Maryland, 380 U.S. 51, 58, 85 S.Ct. 734,13 L.Ed.2d 649 (1965)). Warren did no such thing, so it did not provide Big Dipper with its constitutional entitlement to “prompt judicial review.”[2]
In dicta, the majority struggles against our precedent. Realizing that it must find a handhold above our circuit, it grasps for the Supreme Court’s fractured opinion in FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). *725 That opinion, however, does not provide the majority sanctuary. The majority claims that six Justices agreed that “the First Amendment does not require that the city bear the burden of going to court to effect the denial of a license application or that it bear the burden of proof once in court.” Op. at 721 (quoting FW/PBS, 493 U.S. at 227, 110 S.Ct. 596 (O’Connor, J., joined by Stevens and Kennedy, JJ., plurality)). This statement is incorrect and misses the point, but a bit of context is necessary to ground that discussion.
In Freedman, the Supreme Court held that statutory systems requiring permission before speech occurs constitute unconstitutional prior restraints unless: 1) the systems restrain speech prior to judicial review only for a brief period during which they preserve the status quo; 2) the systems provide prompt judicial review; and 3) the city goes to court to suppress the speech and bears the burden of proof there. 380 U.S. at 58-60, 85 S.Ct. 734. The Court reviewed the three Freedman factors in FW/PBS, and a majority held the Dallas scheme at issue there unconstitutional for its failure to impose strict administrative time limits. 493 U.S. at 229, 110 S.Ct. 596 (O’Connor, J., plurality); id. at 238-39, 110 S.Ct. 596 (Brennan, J., joined by Marshall and Blackmun, JJ., concurring in the judgment). Three Justices believed only the first two Freedman factors applied, id. at 229, 110 S.Ct. 596 (O’Connor, J., plurality), three Justices believed all the Freedman factors applied, id. at 238-39, 110 S.Ct. 596 (Brennan J., concurring in the judgment), and three Justices believed the Freedman test was inapplicable, id. at 244-45, 110 S.Ct. 596 (White, J., joined by Rehnquist, C.J., concurring in part and dissenting in part); id. at 253, 110 S.Ct. 596 (Scalia, J., concurring in part and dissenting in part).
With that background, I explain why the majority’s interpretation of FW/PBS is incorrect. First, six Justices did not agree with the FW/PBS plurality position cited by the majority here. Justice White’s partial concurrence and partial dissent, joined by Chief Justice Rehnquist, did not coincide with the plurality’s perspective that, though the Freedman analysis applied generally, the last factor was not constitutionally required; instead, Justice White and Chief Justice Rehnquist believed that the Freedman analysis was entirely irrelevant. FW/PBS, 493 U.S. at 244-45, 110 S.Ct. 596 (White, J., concurring in part and dissenting in part). Justice White’s opinion saw the Dallas ordinances as merely time, place, and manner restrictions to be upheld accordingly so long as they did not allow “[ujnbridled discretion,” which the two Justices believed the restrictions did not. Id. at 246, 110 S.Ct. 596. This position does not overlap with the plurality. And Justice Scalia’s partial concurrence and partial dissent is even further afield: He did not believe the First Amendment limited the Dallas ordinances at all. Id. at 253, 110 S.Ct. 596 (Scalia, J., concurring in part and dissenting in part) (“Because I think that Dallas could constitutionally have proscribed the commercial activities that it chose instead to license, I do not think the details of its licensing scheme had to comply with First Amendment standards.”). In sum, the majority misreads FW/PBS.
Second, the statement from the plurality opinion that the majority cites — about the third Freedman factor — is “dicta[,j because it is not necessary ... to reach a decision in th[e] case.” Beaven v. U.S. Dep’t of Justice, 622 F.3d 540, 558 (6th Cir.2010). That is because the plurality would “hold that the failure to provide the[ ] essential safeguards [of the first two Freedman factors] renders the ordinance’s licensing requirement unconstitutional.” *726 FW/PBS, 493 U.S. at 229, 110 S.Ct. 596 (O’Connor, J., plurality). The plurality’s discussion of the third factor was thus superfluous, and the Court has implicitly recognized as much subsequently. See City News & Novelty, Inc. v. City of Waukesha, 531 U.S. 278, 281, 121 S.Ct. 743,148 L.Ed.2d 757 (2001).
Third, the plurality’s statement, were it endorsed by at least two other Justices and were it not dicta, is not the categorical rule that the majority here claims it is. Instead, the plurality’s rule examined the specific restrictions of the Dallas licensing scheme before suggesting that Dallas need not go to court to defend its scheme. Id. at 229-30, 110 S.Ct. 596; cf. City of Littleton, 541 U.S. at 781-83, 124 S.Ct. 2219 (highlighting the individualized determination of what First Amendment strictures govern any particular city ordinance serving as a prior restraint). This same fact, meanwhile, demonstrates why the majority’s statement that “[t]he rule cited by the dissent here applies to censorship cases, not licensing ones,” is simply incorrect: The “rule” is part of Freedman’s prior-restraint analysis, which the Court has applied to licensing as well as “censorship,” if one may even draw such a distinction. See City of Littleton, 541 U.S. at 778-80, 124 S.Ct. 2219; City News & Novelty, 531 U.S. at 280-81, 121 S.Ct. 743.
Additionally, and most importantly, even were the majority’s statement accurate— which it is not — it misses the point. The plurality’s discussion in FW/PBS deals with the third Freedman factor regarding initiation of litigation, not the separate requirement for prompt judicial review. FW/PBS, 493 U.S. at 227-29, 110 S.Ct. 596 (O’Connor, J., plurality). And while these requirements may align, they do not merge. Perhaps realizing as much, the majority suggests prompt judicial review encompasses solely “judicial,” presumably meaning federal or state court, as opposed to “administrative,” review. Op. at 722. However, “Freedman’s ‘judicial review1 safeguard is meant to prevent undue delay, [which] include[s] judicial, as well as administrative, delay.” City of Littleton, 541 U.S. at 781, 124 S.Ct. 2219 (emphasis in original) (internal quotation marks and citation omitted); cf. Thomas v. Chicago Park Dist., 534 U.S. 316, 324, 122 S.Ct. 775, 151 L.Ed.2d 783 (2002) (pointing to administrative review procedures to demonstrate the availability of review of a licensing board’s decision based on a content-neutral time, place, and manner restriction). Moreover, because our precedent has invalidated systems for lack of prompt judicial review (under the First Amendment) where sexually-oriented business owners could obtain not only court review, but some administrative review as well, systems that accord no administrative review, a fortiori, must fail under First Amendment scrutiny. See Deja Vu of Nashville, 274 F.3d at 401. Contrary to the majority’s statement, therefore, a city must promptly provide both court and administrative review for a sexually oriented licensing system to be a permissible prior restraint under the First Amendment. Warren did not do so, so its licensing scheme is an unconstitutional prior restraint as applied here. I respectfully dissent.

. Big Dipper later submitted a revised license application. Warren denied that license as well, also while failing to indicate Big Dipper’s right to a hearing or other judicial review. (See Second Denial Letter, Dist. Ct. Docket No. 42-8 (Ex. 81).) Once might be a mistake, but twice is a pattern.

. This absolute disregard for reviewing the denial of Big Dipper’s license is made all the worse because, under Warren’s ordinances, Warren was under a duty to grant Big Dipper's license when it took longer than twenty days to approve or deny it. (See City of Warren Code of Ordinances, Ordinance 80-621, art. X, §§ 6-285(a) (requiring Warren to act on a license application within twenty days) and 6-290 (deeming Warren’s failure to act on an application within the time stated in Warren’s ordinances to constitute Warren’s approval of that license application), Dist. Ct. Docket No. 59-7 (Ex. E).) Further, there is no exception for "incomplete” or "non-notarized” applications, so that argument does nothing for Warren.