**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| IN RE NATIONAL SECURITY LETTER, | No. 16-16067 |
| UNDER SEAL, *Petitioner-Appellant*, v. JEFFERSON B. SESSIONS III, Attorney General, *Respondent-Appellee*. | D.C. No. 3:11-cv-02173-SI |

| | |
|---|---|
| IN RE NATIONAL SECURITY LETTER, | No. 16-16081 |
| UNDER SEAL, *Petitioner-Appellant*, v. JEFFERSON B. SESSIONS III, Attorney General, *Respondent-Appellee*. | D.C. No. 3:13-mc-80089-SI |

IN RE NATIONAL SECURITY LETTER,

UNDER SEAL,
                    *Petitioner-Appellant*,

v.

JEFFERSON B. SESSIONS III, Attorney
General,
                    *Respondent-Appellee.*

No. 16-16082

D.C. No.
3:13-cv-01165-SI

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Northern District of California
Susan Illston, District Judge, Presiding

Argued and Submitted March 22, 2017
San Francisco, California

Filed July 17, 2017
Amended May 11, 2022

Before: Mary H. Murguia, Chief Judge, and Sandra S.
Ikuta and N. Randy Smith, Circuit Judges.

Order;
Opinion by Judge Ikuta;
Concurrence by Chief Judge Murguia

# SUMMARY[*]

## Civil Rights

The panel (1) amended its opinion affirming the district court's orders denying petitions brought by electronic communication service providers pursuant to 18 U.S.C. § 3511(a) to set aside information requests and nondisclosure requirements in National Security Letters issued to them by the Federal Bureau of Investigation; (2) denied a petition for rehearing; (3) denied a petition for rehearing en banc on behalf of the court, noting that a judge requested a vote on whether to rehear the matter en banc, but the matter failed to receive a majority of votes of the nonrecused active judges in favor of en banc consideration; and (4) ordered that no further petitions would be entertained.

A National Security Letter is an administrative subpoena issued by the FBI to a wire or electronic communication service provider requiring the provider to produce specified subscriber information that is relevant to an authorized national security investigation. 18 U.S.C. § 2709(a). By statute, a National Security Letter may include a requirement that the recipient not disclose the fact that it has received such a request. In this case, recipients of National Security Letters alleged that the nondisclosure requirement violated their First Amendment rights.

The panel held that § 2709(c)'s nondisclosure requirement imposes a content-based restriction that was

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

subject to, and withstood, strict scrutiny. The panel further held that, assuming the nondisclosure requirement was the type of prior restraint for which the procedural safeguards set forth in *Freedman v. Maryland*, 380 U.S. 51 (1965) were required, the National Security Letters law provided those safeguards. The panel concluded that the nondisclosure requirement did not run afoul of the First Amendment.

Concurring, Chief Judge Murguia agreed that the NSL law's nondisclosure requirement—which prohibits an electronic communication service provider from disclosing that the Federal Bureau of Investigation has sought or obtained information from the provider pursuant to an administrative subpoena, 18 U.S.C. § 2709(c)(1)(A)—did not violate the First Amendment. The law passed constitutional muster because it was narrowly tailored to serve compelling national security interests and because it provided the government "narrow, objective, and definite standards" which limited its ability to prohibit disclosure as well as sufficiently robust procedural safeguards, including prompt judicial review. Chief Judge Murguia wrote separately, however, merely to make explicit that the panel's conclusions rested on the assumption that the NSL law's nondisclosure requirement was a prior restraint of speech.

---

**COUNSEL**

Andrew Crocker (argued), Nathan Cardozo, Lee Tien, Kurt Opsahl, Jennifer Lynch, David Greene, Cindy Cohn, and Aaron Mackey, Electronic Frontier Foundation, San Francisco, California; Richard Wiebe, Law Office of Richard R. Wiebe, San Francisco, California; for Petitioner-Appellants.

Lewis S. Yelin (argued), Scott R. McIntosh, and Douglas N. Letter, Appellate Staff; Brian Stretch, United States Attorney; Benjamin C. Mizer, Principal Deputy Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; for Respondent-Appellee.

Jonathan Manes, University at Buffalo School of Law, The State University of New York, Buffalo, New York; Hannah Bloch-Wehba and John T. Langford, Floyd Abrams Institute for Freedom of Expression, Yale Law School, New Haven, Connecticut; for Amici Curiae Abrams Institute for Freedom of Expression and First Amendment Scholars.

Bruce D. Brown, Caitlin Vogus, and Selina MacLaren, The Reporters Committee for Freedom of the Press, Washington, D.C., for Amici Curiae The Reporters Committee for Freedom of the Press and 20 Media Organizations.

---

## ORDER

The opinion filed July 17, 2017, and appearing at 863 F.3d 1110, is hereby amended as follows:

On page 1121, part III, the seventh sentence should be amended as follows:

> Accordingly, we analyze the recipients' challenge as an as-applied challenge.

On page 1129, part III, the following footnote 22 should be added after <But the Court has not held that these sorts of government confidentiality restrictions must have the sorts of

procedural safeguards required for censorship and licensing schemes.>

> 22.    Contrary to Chief Judge Murguia's concurrence, the Supreme Court does not refer to every law that bars speech in advance of its occurrence as a prior restraint. Conc. at 1.    The Supreme Court has upheld the governmental confidentiality requirements discussed above, and of course, many other opinions uphold laws barring future speech, *see, e.g.*, *Holder v. Humanitarian Law Project*, 561 U.S. 1, 36 (2010) (upholding a law criminalizing communications that provide material support to a foreign terrorist organization); *Rust v. Sullivan*, 500 U.S. 173, 192–94 (1991) (upholding regulations barring certain federally funded facilities from advocating abortion as a method of family planning).    Although these cases considered laws preventing speech in advance of its occurrence, Conc. at 1, the Supreme Court did not use the term "prior restraint" nor require the procedural safeguards set forth in *Freedman*.

Further, Chief Judge Murguia's attached concurrence shall be appended to the opinion.

With this amendment, the petition for rehearing en banc, filed October 2, 2017, is **DENIED**.  The panel has voted to deny appellant's petition for rehearing.  The full court has been advised of the petition for rehearing en banc.  A judge requested a vote on whether to rehear the matter en banc.

The matter failed to receive a majority of votes of the nonrecused active judges in favor of en banc consideration. Fed. R. App. P. 35(g). Judge Miller and Judge Koh did not participate in the deliberations or vote in this case. No further petitions for rehearing or rehearing en banc will be entertained.

## OPINION

IKUTA, Circuit Judge:

In this case, we consider challenges to the constitutionality of the law authorizing the Federal Bureau of Investigation (FBI) to prevent a recipient of a national security letter (NSL) from disclosing the fact that it has received such a request. 18 U.S.C. § 2709(c). An NSL is an administrative subpoena issued by the FBI to a wire or electronic communication service provider which requires the provider to produce specified subscriber information that is relevant to an authorized national security investigation. *Id.* § 2709(a). By statute, the NSL may include a requirement that the recipient not "disclose to any person that the Federal Bureau of Investigation has sought or obtained access to information or records" under the NSL law. *Id.* § 2709(c)(1)(A). Both the information request and the nondisclosure requirement are subject to judicial review. *See id.* § 3511. (Because § 2709 and § 3511 work together, we refer to them collectively as "the NSL law.")

Certain recipients of these NSLs claim that the nondisclosure requirement violates their First Amendment rights. We hold that the nondisclosure requirement in 18 U.S.C. § 2709(c) is a content-based restriction on speech

that is subject to strict scrutiny, and that the nondisclosure requirement withstands such scrutiny. Accordingly, we affirm.

I

We begin by reviewing the statutory framework under which NSLs are issued. The law authorizing the FBI to send an information request to a wire or electronic communication service provider was originally enacted as part of the Electronic Communications Privacy Act of 1986. Pub. L. No. 99-508, § 201, 100 Stat. 1848, 1867. The law was extensively amended in 2006, as part of the USA Patriot Improvement and Reauthorization Act of 2005. Pub. L. No. 109-177, §§ 115, 116(a), 120 Stat. 192, 211–17 (2006). The letters received by the recipients here were issued under the 2006 version of the NSL law. Subsequently, Congress enacted the USA FREEDOM Act of 2015, Pub. L. No. 114-23, 129 Stat. 268, which further amended the NSL law effective June 2, 2015.[1]

The NSL law is best understood as a form of administrative subpoena. Congress may authorize federal agencies to issue administrative subpoenas without court authorization for any purpose within Congress's constitutional power. *See Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186, 208–09 (1946); *see also ICC v. Brimson*, 154 U.S. 448, 472–73 (1894), *overruled on other grounds by Bloom v. Illinois*, 391 U.S. 194, 198–200 (1968). But while

---

[1] Where necessary to differentiate between the 2006 and 2015 versions of the NSL law, we refer to the former as the "2006 NSL law" and the latter as the "2015 NSL law." Unless otherwise noted, a reference to 18 U.S.C. § 2709 or 18 U.S.C. § 3511 refers to the 2015 NSL law.

an agency may issue a subpoena without prior judicial approval, it must invoke the aid of a federal court to enforce it. *See, e.g.*, *United States v. Sec. State Bank & Trust*, 473 F.2d 638, 641–42 (5th Cir. 1973); *see also Shasta Minerals & Chem. Co. v. SEC*, 328 F.2d 285, 286 (10th Cir. 1964). The "power to punish is not generally available to federal administrative agencies," and so enforcement must be sought "by way of a separate judicial proceeding." *Shasta Minerals*, 328 F.2d at 286.

Sections 2709 and 3511 follow the statutory framework typically used to authorize administrative subpoenas. *Compare* 18 U.S.C. §§ 2709, 3511, *with, e.g.*, 21 U.S.C. § 876(a). Section 2709 authorizes the FBI to make an information request to "[a] wire or electronic communication service provider" for "subscriber information and toll billing records information, or electronic communication transactional records in its custody or possession," and provides that the recipient "shall comply" with the request. 18 U.S.C. § 2709(a).**[2]** In order to issue such a request, the FBI Director or a sufficiently high-ranking designee of the Director must "specifically identif[y] a person, entity, telephone number, or account as the basis for a request," and must certify that the "records sought are relevant to an authorized investigation to protect against international

---

**[2]** 18 U.S.C. § 2709(a) provides:

> Duty to Provide. — A wire or electronic communication service provider shall comply with a request for subscriber information and toll billing records information, or electronic communication transactional records in its custody or possession made by the Director of the Federal Bureau of Investigation under subsection (b) of this section.

terrorism or clandestine intelligence activities" and that the investigation "is not conducted solely on the basis of activities protected by the first amendment to the Constitution of the United States." *Id.* § 2709(b)(1)–(2).**³** The NSL must

---

**³** 18 U.S.C. § 2709(b) provides:

Required Certification. — The Director of the Federal Bureau of Investigation, or his designee in a position not lower than Deputy Assistant Director at Bureau headquarters or a Special Agent in Charge in a Bureau field office designated by the Director, may, using a term that specifically identifies a person, entity, telephone number, or account as the basis for a request —

(1) request the name, address, length of service, and local and long distance toll billing records of a person or entity if the Director (or his designee) certifies in writing to the wire or electronic communication service provider to which the request is made that the name, address, length of service, and toll billing records sought are relevant to an authorized investigation to protect against international terrorism or clandestine intelligence activities, provided that such an investigation of a United States person is not conducted solely on the basis of activities protected by the first amendment to the Constitution of the United States; and

(2) request the name, address, and length of service of a person or entity if the Director (or his designee) certifies in writing to the wire or electronic communication service provider to which the request is made that the information sought is relevant to an authorized investigation to protect against international terrorism or clandestine intelligence activities, provided that such an investigation of a United States person is not conducted solely upon the basis of activities

include notice of the availability of judicial review under 18 U.S.C. § 3511. *Id.* § 2709(d).

The NSL law contemplates that in some cases, a recipient's disclosure of the fact that it has received an FBI request for specific information may result in one of four enumerated harms: "(i) a danger to the national security of the United States; (ii) interference with a criminal, counterterrorism, or counterintelligence investigation; (iii) interference with diplomatic relations; or (iv) danger to the life or physical safety of any person." *Id.* § 2709(c)(1)(B).[4] If the FBI Director or a sufficiently high-ranking designee of the Director issues a certification "that the absence of a prohibition of disclosure under this subsection may result" in

---

protected by the first amendment to the Constitution of the United States.

[4] 18 U.S.C. § 2709(c)(1)(B) provides:

Certification. — The requirements of subparagraph (A) shall apply if the Director of the Federal Bureau of Investigation, or a designee of the Director whose rank shall be no lower than Deputy Assistant Director at Bureau headquarters or a Special Agent in Charge of a Bureau field office, certifies that the absence of a prohibition of disclosure under this subsection may result in —

(i) a danger to the national security of the United States;

(ii) interference with a criminal, counterterrorism, or counterintelligence investigation;

(iii) interference with diplomatic relations; or

(iv) danger to the life or physical safety of any person.

one of these harms, *id.*, and the government gives the recipient notice of the availability of judicial review pursuant to § 3511, *see id.* § 2709(d)(2), the government may prohibit the recipient from disclosing that it has received the NSL, *see id.* § 2709(c)(1)(A),**5** subject to such judicial review.

There are three statutory exceptions to the nondisclosure requirement. *See id.* § 2709(c)(2).**6** First, a recipient "may

---

**5** 18 U.S.C. § 2709(c)(1)(A) provides:

In general. — If a certification is issued under subparagraph (B) and notice of the right to judicial review under subsection (d) is provided, no wire or electronic communication service provider that receives a request under subsection (b), or officer, employee, or agent thereof, shall disclose to any person that the Federal Bureau of Investigation has sought or obtained access to information or records under this section.

**6** 18 U.S.C. § 2709(c)(2) provides:

(A) In general. — A wire or electronic communication service provider that receives a request under subsection (b), or officer, employee, or agent thereof, may disclose information otherwise subject to any applicable nondisclosure requirement to —

(i) those persons to whom disclosure is necessary in order to comply with the request;

(ii) an attorney in order to obtain legal advice or assistance regarding the request; or

(iii) other persons as permitted by the Director of the Federal Bureau of Investigation or the designee of the Director.

disclose information otherwise subject to any applicable nondisclosure requirement" to "those persons to whom disclosure is necessary in order to comply with the request." *Id.* § 2709(c)(2)(A)(i). Second, the recipient may disclose such information to "an attorney in order to obtain legal advice or assistance regarding the request." *Id.* § 2709(c)(2)(A)(ii). Third, if the recipient wants to provide the information to other individuals, it may do so if it obtains the permission of the FBI Director or the designee of the Director. *Id.* § 2709(c)(2)(A)(iii). The recipient must also inform those persons receiving the information that they are subject to the same nondisclosure requirement applicable to the initial recipient, *id.* § 2709(c)(2)(C).

As is typical in the administrative subpoena context, § 2709 does not contain any penalty provision either for

---

(B) Application. — A person to whom disclosure is made under subparagraph (A) shall be subject to the nondisclosure requirements applicable to a person to whom a request is issued under subsection (b) in the same manner as the person to whom the request is issued.

(C) Notice. — Any recipient that discloses to a person described in subparagraph (A) information otherwise subject to a nondisclosure requirement shall notify the person of the applicable nondisclosure requirement.

(D) Identification of disclosure recipients. — At the request of the Director of the Federal Bureau of Investigation or the designee of the Director, any person making or intending to make a disclosure under clause (i) or (iii) of subparagraph (A) shall identify to the Director or such designee the person to whom such disclosure will be made or to whom such disclosure was made prior to the request.

failure to comply with the information request or for failure to comply with the nondisclosure requirement. Only a court has authority to enforce the information request or the nondisclosure requirement. *See id.* § 3511. If a recipient fails to comply with an information request, the government "may invoke the aid" of a district court "to compel compliance with the request." *Id.* § 3511(c).[7] The court may "issue an order requiring the person or entity to comply with the request," and "[a]ny failure to obey the order of the court may be punished by the court as contempt thereof." *Id.* Alternatively, the recipient of an NSL may petition the district court "for an order modifying or setting aside the request," and the district court may do so "if compliance

---

[7] 18 U.S.C. § 3511(c) provides:

> In the case of a failure to comply with a request for records, a report, or other information made to any person or entity under section 2709(b) of this title, section 626(a) or (b) or 627(a) of the Fair Credit Reporting Act, section 1114(a)(5)(A) of the Right to Financial Privacy Act, or section 802(a) of the National Security Act of 1947, the Attorney General may invoke the aid of any district court of the United States within the jurisdiction in which the investigation is carried on or the person or entity resides, carries on business, or may be found, to compel compliance with the request. The court may issue an order requiring the person or entity to comply with the request. Any failure to obey the order of the court may be punished by the court as contempt thereof. Any process under this section may be served in any judicial district in which the person or entity may be found.

would be unreasonable, oppressive, or otherwise unlawful." *Id.* § 3511(a).**⁸**

Whenever a nondisclosure requirement under § 2709(c) is imposed on a recipient, the recipient may challenge the requirement in one of two ways.  First, the recipient may "file a petition for judicial review in any court described in [§ 3511(a)]." *Id.* § 3511(b)(1)(A).**⁹**  Second, the recipient

---

**⁸** 18 U.S.C. § 3511(a) provides, in relevant part:

> The recipient of a request for records, a report, or other information under section 2709(b) of this title . . . may, in the United States district court for the district in which that person or entity does business or resides, petition for an order modifying or setting aside the request. The court may modify or set aside the request if compliance would be unreasonable, oppressive, or otherwise unlawful.

**⁹** 18 U.S.C. § 3511(b)(1) provides:

> (A) Notice. — If a recipient of a request or order for a report, records, or other information under section 2709 of this title . . . wishes to have a court review a nondisclosure requirement imposed in connection with the request or order, the recipient may notify the Government or file a petition for judicial review in any court described in subsection (a).

> (B) Application. — Not later than 30 days after the date of receipt of a notification under subparagraph (A), the Government shall apply for an order prohibiting the disclosure of the existence or contents of the relevant request or order. An application under this subparagraph may be filed in the district court of the United States for the judicial district in which the recipient of the order is doing business or in the district

"may notify the Government" that it desires judicial review, *id.*, in which case "[n]ot later than 30 days after the date of receipt of a notification [from the recipient], the Government shall apply [to the district court] for an order prohibiting" disclosure, *id.* § 3511(b)(1)(B).    The government's application for a nondisclosure order (or for an extension of such an order), must include a certification from the FBI Director or a sufficiently high-ranking designee "containing a statement of specific facts indicating that the absence of a prohibition of disclosure under [§ 3511(b)] may result in" one of the four harms enumerated in § 2709(c)(1)(B).    *Id.* § 3511(b)(2).[10]   The nondisclosure requirement remains in

court of the United States for any judicial district within which the authorized investigation that is the basis for the request is being conducted. The applicable nondisclosure requirement shall remain in effect during the pendency of proceedings relating to the requirement.

(C) Consideration. — A district court of the United States that receives a petition under subparagraph (A) or an application under subparagraph (B) should rule expeditiously, and shall, subject to paragraph (3), issue a nondisclosure order that includes conditions appropriate to the circumstances.

[10] 18 U.S.C. § 3511(b)(2) provides:

An application for a nondisclosure order or extension thereof or a response to a petition filed under paragraph (1) shall include a certification from the Attorney General, Deputy Attorney General, an Assistant Attorney General, or the Director of the Federal Bureau of Investigation, or a designee in a position not lower than Deputy Assistant Director at Bureau headquarters or a Special Agent in Charge in a Bureau field office designated by the Director, or in the case of a request

effect while the district court considers the recipient's challenge or the government's application for a nondisclosure order. *Id.* § 3511(b)(1)(B).

A court receiving a recipient's petition for judicial review of a nondisclosure requirement or the government's application for a nondisclosure order "should rule expeditiously." *Id.* § 3511(b)(1)(C). The court "shall issue a nondisclosure order or extension thereof . . . if the court determines that there is [good] reason to believe that disclosure of the information subject to the nondisclosure requirement during the applicable time period may result in" one of the four enumerated harms. *Id.* § 3511(b)(3).[11] In

---

by a department, agency, or instrumentality of the Federal Government other than the Department of Justice, the head or deputy head of the department, agency, or instrumentality, containing a statement of specific facts indicating that the absence of a prohibition of disclosure under this subsection may result in [the four harms enumerated in 18 U.S.C. § 2709(c)(1)(B)].

Under the 2006 NSL law, the government was not required to provide a statement of specific facts supporting its certification. Rather, "such certification shall be treated as conclusive unless the court finds that the certification was made in bad faith." 18 U.S.C. § 3511(b)(2) (2006).

[11] 18 U.S.C. § 3511(b)(3) provides:

A district court of the United States shall issue a nondisclosure order or extension thereof under this subsection if the court determines that there is reason to believe that disclosure of the information subject to the nondisclosure requirement during the applicable time period may result in [the four harms enumerated in 18 U.S.C. § 2709(c)(1)(B)].

making this determination, "the court shall, upon request of the government, review ex parte and in camera any government submission or portions thereof, which may include classified information." *Id.* § 3511(e). Any nondisclosure order issued by a reviewing court should "include[] conditions appropriate to the circumstances." *Id.* § 3511(b)(1)(C).

In amending the NSL law in 2015, Congress also required the Attorney General to promulgate procedures for periodically reviewing and terminating any nondisclosure requirements issued in connection with an NSL. Pub. L. No. 114-23, Title V, § 502(f), 129 Stat. at 288 (codified at 12 U.S.C. § 3414 note). The Attorney General adopted such procedures in November 2015. *See* Termination Procedures for National Security Letter Nondisclosure Requirement, Fed. Bureau of Investigation (Nov. 24, 2015), https://www.fbi.gov/file-repository/nsl-ndp-procedures.pdf (hereinafter "Termination Procedures"). Under these procedures, any nondisclosure requirement must terminate when the underlying investigation is closed or "on the three-year anniversary of the initiation" of the investigation, unless "the FBI makes a determination that one of the existing statutory standards for nondisclosure is satisfied." Once the FBI has determined that nondisclosure is no longer required, it must provide written notice to the recipient to that effect. If the FBI does not terminate the nondisclosure requirement at either of these occasions, the recipient retains the right to

---

The Second Circuit in *John Doe, Inc. v. Mukasey* adopted the "common-sense understanding" that "reason" in the 2006 NSL law means "good reason." 549 F.3d 861, 875 (2d Cir. 2008). We also adopt this understanding.

challenge the requirement in district court. 18 U.S.C. § 3511(a).

The 2015 legislation amending the NSL law also added 50 U.S.C. § 1874, which allows "[a] person subject to a nondisclosure requirement" to disclose aggregate data regarding the number of NSLs (in specified ranges or "bands") that the person has received. Pub. L. No. 114-23, Title VI, § 603(a), 129 Stat. at 295–96 (codified at 50 U.S.C. § 1874(a)(1)–(4)). For instance, a person may report receiving 0 to 99, 0 to 249, 0 to 499, or 0 to 999 nondisclosure requirements. A person who chooses to report receiving 0 to 99 nondisclosure requirements may make such a disclosure on an annual basis, while a person who chooses to report receipt of a larger range of NSLs may report semiannually. *See* 50 U.S.C. § 1874(a)(1)–(4).

II

We next turn to the facts of these consolidated appeals, which involve five NSLs issued to two recipients between 2011 and 2013 (while the 2006 NSL law remained in effect). Each NSL at issue contained an information request and a nondisclosure requirement, and informed the recipient that it could seek judicial review of the nondisclosure requirement by notifying the FBI and that the FBI would accordingly initiate judicial review within 30 days.

The first recipient, CREDO Mobile, received three of the NSLs at issue, the first in 2011 and two more in 2013. The second recipient, CloudFlare, received the other two NSLs, both in 2012. Following receipt, CREDO and CloudFlare petitioned the district court to set aside the information requests and nondisclosure requirements contained in each NSL. Each recipient also sought to enjoin the government

from issuing additional NSLs and from imposing additional nondisclosure requirements. In response, the government cross-moved in each case to compel compliance with the NSLs.

In considering the 2011 NSL issued to CREDO, the district court held that the nondisclosure and judicial review provisions in the 2006 NSL law violated the First Amendment and that these provisions were not severable from the remainder of the statute, and accordingly enjoined the government from issuing information requests and from enforcing nondisclosure requirements. *See In re Nat'l Sec. Letter*, 930 F. Supp. 2d 1064, 1081 (N.D. Cal. 2013). The district court stayed its decision pending the resolution of the government's appeal.

Notwithstanding its conclusion that the 2006 NSL law was constitutionally deficient, the district court denied the petitions to set aside the information requests and nondisclosure requirements in the 2013 NSLs issued to CREDO and the 2012 NSLs issued to CloudFlare. The district court reasoned that those NSLs were issued in full compliance with the procedural and substantive requirements suggested by the Second Circuit in *John Doe, Inc. v. Mukasey*, 549 F.3d 861 (2d Cir. 2008), which had held that the 2006 NSL law could be constitutionally applied if certain additional safeguards were provided. CREDO and CloudFlare appealed.

While we considered these appeals, Congress enacted the USA FREEDOM Act, effective June 2, 2015. Recognizing the extensive changes to the NSL law made by this enactment, we vacated the district court's judgments and

remanded to allow the district court to consider in the first instance the constitutionality of the 2015 NSL law.

On remand, CREDO and CloudFlare submitted renewed petitions under § 3511(a) to set aside the information requests and nondisclosure requirements contained in each NSL and the government cross-petitioned to enforce both components of the NSLs. This time, the district court held that the NSL law, as amended, was constitutional. It also determined that the government had carried its burden of showing that there was good reason to believe that disclosure of the 2011 NSL to CREDO and of the 2012 NSLs to CloudFlare might result in one of the four enumerated harms. Accordingly, it granted the government's cross-petitions to enforce those three NSLs in their entirety. However, with respect to the 2013 NSLs to CREDO, the district court held that the government's certification that one of the four enumerated harms would result absent nondisclosure was insufficient. Accordingly, it granted CREDO's petition to set aside the nondisclosure requirement in the 2013 NSLs.

CREDO and CloudFlare appealed the denial of their petitions to set aside the information requests and nondisclosure requirements in the 2011 and 2012 NSLs. The government cross-appealed the district court's decision to set aside the nondisclosure requirements in the 2013 NSLs to CREDO, but has since voluntarily dismissed its cross-appeal.[12]

---

[12] The 2013 NSLs' nondisclosure requirements are therefore no longer at issue, and CREDO raises no argument on appeal challenging the information requests contained in the 2013 NSLs.

While this appeal was pending, the FBI closed the investigation underlying the 2011 NSL to CREDO. Following the Termination Procedures adopted as required by the 2015 amendments, the FBI determined that continued nondisclosure was no longer necessary and so notified CREDO in writing. According to the FBI's letter to CREDO, CREDO may now disclose "[t]he fact that [CREDO] received the NSL on a certain date" and "[w]hether or not [CREDO] provided responsive information to the FBI pursuant to the NSL." However, "the nondisclosure requirement remains in place for any information regarding the customer account(s) for which information was sought, as well as any other information that could be used to identify the subscriber(s) for the customer account(s)."[13]

The FBI also closed the investigation underlying one of the 2012 NSLs issued to CloudFlare. Following the Termination Procedures, the FBI determined that continued nondisclosure was no longer necessary and provided CloudFlare written notice to that effect. According to the FBI's letter to CloudFlare, CloudFlare may now disclose the "[t]he fact that [CloudFlare] received the NSL on a certain date"; "[t]he customer account(s) for which information was sought"; and "[w]hether or not [CloudFlare] provided responsive information to the FBI pursuant to the NSL."[14]

---

[13] The nondisclosure requirement also remains in place for the name and contact information of the FBI Special Agent identified in the NSL.

[14] As with the 2011 NSL to CREDO, the nondisclosure requirement remains in place for the name and contact information of the FBI Special Agent identified in the first 2012 NSL to CloudFlare.

The nondisclosure requirement contained in the second 2012 NSL to CloudFlare remains in full effect.[15]

In sum, CREDO is now subject to a nondisclosure requirement "for any information regarding the customer account(s) for which information was sought, as well as any other information that could be used to identify the subscriber(s) for the customer account(s)" under the 2011 NSL. CloudFlare is subject to a nondisclosure requirement only as to one of the 2012 NSLs.[16]

III

We begin our constitutional analysis by analyzing whether this appeal raises a facial challenge or an as-applied challenge to the NSL law. "A facial challenge is an attack on a statute itself as opposed to a particular application." *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2449 (2015). By contrast, "[a]n as-applied challenge contends that the law is unconstitutional as applied to the litigant's particular speech activity, even though the law may be capable of valid application to others." *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998). The recipients assert that the nondisclosure requirement of § 2709(c) prevents them from speaking about matters of public policy and engaging in the political process, but do not argue that the NSL law can never be constitutionally applied in any context. Accordingly, we

---

[15] Because CloudFlare identified itself not only as the recipient of one of the 2012 NSLs but also as challenging two NSLs before us, the FBI determined that CloudFlare may be publicly identified.

[16] On appeal, CREDO and CloudFlare raise the same arguments. Therefore, we refer to the appellants together as the "recipients."

analyze the recipients' challenge as an as-applied challenge. *Cf. Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 802–03 (1984) (concluding that the plaintiff's challenge to an ordinance was an as-applied challenge because the plaintiffs acknowledged that the statute could be validly applied in other cases).

"[C]onstitutional questions of fact (such as whether certain restrictions create a 'severe burden' on an individual's First Amendment rights) are reviewed de novo." *Prete v. Bradbury*, 438 F.3d 949, 960 (9th Cir. 2006) (emphasis omitted). We also review legal conclusions de novo. *Id.*

IV

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech, or of the press." U.S. Const. amend. I. Despite the breadth of this language, the Supreme Court has concluded that some restrictions on speech are constitutional, provided they survive the appropriate level of scrutiny. When the government restricts speech based on its content, a court will subject the restriction to strict scrutiny. *See Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015); *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000). Under strict scrutiny, restrictions "may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 135 S. Ct. at 2226. If the governmental restriction on speech is content neutral, a court will uphold it if it furthers "an important or substantial governmental interest unrelated to the suppression of free speech, provided the incidental restrictions did not burden substantially more speech than is necessary to further those interests." *Turner*

*Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 186 (1997) (internal quotation marks omitted).[17]

Even if the government has constitutional authority to impose a particular content-based restriction on speech, the government does not have unfettered freedom to implement such a restriction through "a system of prior administrative restraints." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963); *see also id.* at 66 ("[A] State is not free to adopt whatever procedures it pleases for dealing with obscenity . . . without regard to the possible consequences for constitutionally protected speech." (quoting *Marcus v. Search Warrants*, 367 U.S. 717, 730–31 (1961))). Rather, "a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license" or other burden must itself pass constitutional muster. *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 150–51 (1969). A system that gives public officials authority to regulate or prohibit an individual's exercise of First Amendment rights based on the content of the individual's speech must have "narrow, objective, and definite standards to guide the licensing authority," *id.* at 151, and must have the "procedural safeguards that reduce the danger of suppressing constitutionally protected speech," *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 559 (1975). These procedural safeguards are as follows: "(1) any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained; (2) expeditious judicial review of that decision must be

---

[17] The government may also restrict the time, place, and manner of speech so long as it does not discriminate based on content and meets certain other criteria. *See Consol. Edison Co. of N.Y., Inc. v. Pub. Serv. Comm'n*, 447 U.S. 530, 536 (1980). This form of restriction is not at issue here.

available; and (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court." *Thomas v. Chi. Park Dist.*, 534 U.S. 316, 321 (2002) (quoting *FW/PBS v. City of Dallas*, 493 U.S. 215, 227 (1990) (principal opinion of O'Connor, J.), and citing *Freedman v. Maryland*, 380 U.S. 51, 58–60 (1965)). The procedural requirements for systems imposing content-based restraints do not apply, however, to "a content-neutral permit scheme regulating speech in a public forum." *Id.* at 322.

Accordingly, our analysis of § 2709(c)'s nondisclosure requirement proceeds in three steps. We must first determine whether the nondisclosure requirement is content based or content neutral. If the nondisclosure requirement is content based, we then consider whether it survives strict scrutiny. Finally, we must determine whether the nondisclosure requirement constitutes the type of restraint for which the procedural safeguards are required and, if so, whether it provides those safeguards.

## A

We turn first to the question whether the nondisclosure requirement in § 2709(c) is content based or content neutral. A government's restriction on "speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed*, 135 S. Ct. at 2227. The first step in determining whether speech is content based is "to consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." *Id.* (quoting *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 566 (2011)). Regulations draw such a distinction if they "target speech based on its communicative

content," *id.* at 2226, prohibit "public discussion of an entire topic," *id.* at 2230 (quoting *Consol. Edison Co. of N.Y. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 530, 537 (1980)), or "single[] out specific subject matter for differential treatment," *id.*

Thus, a regulation or law that restricts speech based on its topic, idea, message, or content is "content based" on its face, and is accordingly subject to strict scrutiny. If a court determines that the law is content based at this first step, the court need not "consider the government's justifications or purposes" for enacting the regulation. *Id.* at 2227. "A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of animus toward the ideas contained in the regulated speech." *Id.* at 2228 (internal quotation marks omitted). Only if a law is content neutral on its face should a court proceed to consider whether it is nevertheless a content-based regulation of speech because it "cannot be justified without reference to the content of the regulated speech, or [was] adopted by the government because of disagreement with the message [the speech] conveys." *Id.* at 2227 (second alteration in original) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)) (internal quotation marks omitted).

Applying this framework here, the nondisclosure requirement in § 2709(c) is content based on its face. By its terms, the nondisclosure requirement prohibits speech about one specific issue: the recipient may not "disclose to any person that the Federal Bureau of Investigation has sought or obtained access to information or records" by means of an NSL. *See* 18 U.S.C. § 2709(c). Such a restriction "target[s] speech based on its communicative content," and restricts speech based on its "function or purpose." *Reed*, 135 S. Ct.

at 2226–27.  Given this conclusion, we need not proceed to the second step of the analysis, to determine whether the statute stifles views with which the government disagrees, *see Ward*, 491 U.S. at 791, or distinguishes among views about NSLs in deciding which speech is prohibited, *see Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 643 (1994).  We conclude that the nondisclosure requirement is a content-based restriction.

B

Because we have determined that the restriction imposed by the nondisclosure requirement is content based, we turn to the Supreme Court's strict scrutiny test for content-based restrictions on speech and ask whether the nondisclosure requirement permitted by § 2709(c) is narrowly tailored to serve a compelling state interest.  *Reed*, 135 S. Ct. at 2226.

As a threshold matter, we readily conclude that national security is a compelling government interest.  Indeed, the Court has recognized that "[e]veryone agrees that the Government's interest in combating terrorism is an urgent objective of the highest order."  *Holder v. Humanitarian Law Project*, 561 U.S. 1, 28 (2010).  "It is 'obvious and unarguable' that no governmental interest is more compelling than the security of the Nation."  *Haig v. Agee*, 453 U.S. 280, 307 (1981) (quoting *Aptheker v. Sec'y of State*, 378 U.S. 500, 509 (1964)).  By the same token, keeping sensitive information confidential in order to protect national security is a compelling government interest.  *See Dep't of the Navy v. Egan*, 484 U.S. 518, 527 (1988) (recognizing "the Government's compelling interest in withholding national security information from unauthorized persons in the course of executive business" (internal quotation marks omitted));

*Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980) ("The Government has a compelling interest in protecting both the secrecy of information important to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service."). Here, the recipients do not dispute that the nondisclosure requirement directly serves the compelling state interest of national security: a nondisclosure requirement may be imposed only if one of the four enumerated harms "may result" absent nondisclosure. 18 U.S.C. § 2709(c)(1)(B).

We therefore turn to the question whether the nondisclosure requirement in § 2709(c) is narrowly tailored. A restriction is not narrowly tailored "if less restrictive alternatives would be at least as effective in achieving the legitimate purpose that the statute was enacted to serve." *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 874 (1997). Nevertheless, strict scrutiny requires that a content-based restriction "be narrowly tailored, not that it be 'perfectly tailored.'" *Williams-Yulee v. Fla. Bar*, 135 S. Ct. 1656, 1671 (2015) (quoting *Burson v. Freeman*, 504 U.S. 191, 209 (1992)). Accordingly, a reviewing court should "decline to wade into th[e] swamp" of calibrating the individual mechanisms of a restriction. *Id.* Ultimately, the Supreme Court has emphasized that strict scrutiny is not "fatal in fact." *Id.* at 1666 (quoting *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 237 (1995)).

The recipients argue that the 2015 NSL law is not narrowly tailored for two reasons. First, they claim it is overinclusive because it prevents disclosure of the bare fact of receiving the NSL as well as disclosure of the NSL's content. Second, they claim it is not the least restrictive alternative because it allows the government to prohibit

disclosure indefinitely.  Because the recipients claim that the NSL law constitutes a system of prior restraints, they also argue that the statute fails to provide the government with "narrow, objective, and definite standards" to guide its decision to prohibit disclosure.  *Shuttlesworth*, 394 U.S. at 150–51.  We consider each argument in turn.

1

The recipients contend that the NSL law is not narrowly tailored because, as they interpret the NSL law, it prevents disclosures that are not harmful to national security and therefore does not further the government's compelling interest.  Specifically, the recipients argue that a recipient who has millions of customers could disclose the receipt of a single NSL without impeding national security interests.  Second, the recipients argue that 18 U.S.C. § 2709(c)(2)(A)(iii), authorizing the FBI director or a designee to permit a recipient to make disclosures to additional persons, is an insufficient remedy for overinclusiveness because it gives the FBI total discretion to determine who may receive disclosures and does not require the FBI to engage in any consideration of a narrower nondisclosure requirement.  Further, they argue that the judicial review provisions are insufficient to render the nondisclosure requirement narrowly tailored because, according to the recipients, a court's subsequent narrowing of the nondisclosure requirement is irrelevant to the narrow tailoring analysis.[18]  Finally, they argue that 50 U.S.C.

---

[18] The recipients also argue that the judicial review provisions are insufficient to address overinclusiveness because they are triggered only if a recipient challenges the nondisclosure order.  We reject this argument

§ 1874, allowing for disclosure of aggregate data in various ranges, does not remedy the overinclusiveness of the nondisclosure requirement, because it arbitrarily differentiates between recipients who receive fewer than 500 NSLs (who must include "0" in the lowest reporting band) from recipients who receive more than 500 NSLs. As a result, the recipients argue, recipients who receive fewer than 500 NSLs are forced to make the false assertion that they might have received no NSLs.

These arguments are based on the erroneous assumption that, in order to determine whether the NSL law is narrowly tailored, we must analyze each provision of the NSL law individually to ensure that each is itself narrowly tailored. This granular focus cannot be reconciled with the Supreme Court's direction that narrow tailoring is not perfect tailoring. *Williams-Yulee*, 135 S. Ct. at 1671. Analyzing the statute as a whole, we reject the recipients' arguments.

The statute does not authorize the government to issue a nondisclosure requirement based on a mere possibility of harm; rather, a high ranking official must certify that disclosure "may result" in one of four enumerated harms, 18 U.S.C. § 2709(c)(1)(B), meaning that there is "some reasonable likelihood" that harm will result from the disclosure. *John Doe, Inc. v. Mukasey*, 549 F.3d at 875. The government must engage in an individualized analysis of each recipient when making such a certification, which may include consideration of the size of the recipient's customer base. If disclosure of the receipt of an NSL would not result in one of the enumerated harms because the recipient has

because judicial review is available to every recipient and, as we discuss in Section V, the burden of obtaining review is de minimis.

millions of customers, the government could not properly make the certification required under the statute. Moreover, under those circumstances, the reviewing court would lack a good reason to believe that continued nondisclosure as to the fact of receipt is necessary. 18 U.S.C. § 3511(b)(3).

Similarly, the new 2015 provision allowing disclosures to "other persons as permitted by the [FBI] Director" or the Director's designee, *id.* § 2709(c)(2)(A)(iii), merely provides the FBI with more flexibility to tailor the scope of the nondisclosure provision. We reject the recipients' argument that this provision gives the government unfettered discretion and therefore creates a system of insufficiently cabined prior restraints. Even if the NSL law is determined to be the type of regulation for which procedural safeguards are required (see section V, *infra*), the law as a whole imposes narrow, objective, and definite standards on the government before it can issue a nondisclosure requirement, *see id.* § 2709(c); *cf. Shuttlesworth*, 394 U.S. at 150 (considering a city ordinance that "conferred upon the [governmental authority] virtually unbridled and absolute power to prohibit" certain forms of speech). The fact that the statute also gives the FBI Director or a designee discretion to make additional exceptions to the nondisclosure requirement does not lessen the adequacy of the clear standards imposed on these officials before issuing a nondisclosure requirement in the first place.

Nor are we persuaded by the recipients' attempt to divorce the nondisclosure requirement from the availability of judicial review, which authorizes a court to modify a nondisclosure order with "conditions appropriate to the circumstances," 18 U.S.C. § 3511(b)(1)(C). The availability of judicial review is a component of each nondisclosure requirement issued under § 2709(c); each recipient is

informed of the availability of judicial review in the NSL itself. *See id.* § 2709(d); *see also id.* § 3511(a), (b)(1). The fact that some, or even most, NSL recipients do not seek judicial review of a nondisclosure requirement is not relevant to the question whether the NSL law is narrowly tailored on its face.

Finally, the provision allowing a speaker to disclose its status as a recipient of a specified range of NSLs, *see* 50 U.S.C. § 1874, does not affect our conclusion that the NSL statute is narrowly tailored. To the contrary, the provisions allow recipients to make additional specified disclosures regarding the receipt of the nondisclosure requirements in certain circumstances without obtaining government or court approval. We decline the recipients' invitation to quibble with the particular ranges selected by Congress. *See Williams-Yulee*, 135 S. Ct. at 1671.

2

The recipients next argue that the nondisclosure requirement in § 2709(c) is not narrowly tailored because it authorizes restraints of overly long or indefinite duration and so is not the least restrictive means of achieving the government's compelling interest. We agree that in order to ensure that the nondisclosure requirement is narrowly tailored to serve the government's compelling interest in national security, a nondisclosure requirement must terminate when it no longer serves such a purpose. But the 2015 amendments to the NSL law largely address this concern by requiring the Attorney General to promulgate the Termination Procedures,

which are now in effect.**[19]**  Under these procedures, the FBI is required to reassess the necessity of nondisclosure on two occasions: three years after an investigation is begun and upon the closing of an investigation.  This mandated reassessment reduces the likelihood that an overly long nondisclosure requirement will be imposed.  For example, if the need for nondisclosure arises because of the ongoing status of an investigation, nondisclosure would no longer be required following the closure of the investigation, and the requirement would terminate pursuant to the Termination Procedures.**[20]**

Nonetheless, the Termination Procedures do not resolve the duration issue entirely.  For example, where the government determines that the nondisclosure requirement remains necessary at the close of an investigation, the Termination Procedures do not require any subsequent review.  Similarly, if an investigation extends for many years, the Termination Procedures do not provide for any interim review between the third-year anniversary and the date the investigation closes.

But the Termination Procedures are supplemented by the availability of judicial review.  When judicial review is sought, either through a recipient's own petition or on the government's application following notice from a recipient,

---

**[19]** The recipients do not challenge the Termination Procedures themselves.

**[20]** In this case, the Termination Procedures worked as intended: nondisclosure requirements in two of the NSLs at issue in this case were reduced in scope or entirely removed pursuant to the Termination Procedures, as the FBI determined upon the completion of the relevant investigations that continued nondisclosure was not required.

the reviewing court "shall . . . issue a nondisclosure order that includes conditions appropriate to the circumstances." 18 U.S.C. § 3511(b)(1)(C). A court's order enforcing an administrative subpoena must be within constitutional bounds. *See Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349–50 (9th Cir. 1988). Therefore, a reviewing court would be bound to ensure that the nondisclosure requirement does not remain in place longer than is necessary to serve the government's compelling interest. *See Playboy Entm't*, 529 U.S. at 813.

Moreover, as part of the judicial review process, a court may require the government to justify the continued necessity of nondisclosure on a periodic, ongoing basis, or may terminate the nondisclosure requirement entirely if the government cannot certify that one of the four enumerated harms may occur. *See In re Nat'l Sec. Letters*, No. 16-518, 2016 WL 7017215, at *4 (D.D.C. July 25, 2016) (imposing periodic review every three years); *see also In re Nat'l Sec. Letter*, 165 F. Supp. 3d 352, 356 (D. Md. 2015) (imposing periodic review every 180 days until issuance of the Termination Procedures). Accordingly, any constitutional concerns regarding the duration of the nondisclosure requirement can be addressed by a reviewing court's determination that periodic review should be one of the "conditions appropriate to the circumstances." *See* 18 U.S.C. § 3511(b)(1)(C).

We therefore conclude that the 2015 NSL law is narrowly tailored to serve a compelling government interest, both as to inclusiveness and duration. Accordingly, we hold that the

nondisclosure requirement in § 2709(c) survives strict scrutiny.[21]

V

Having determined that the First Amendment does not prevent the government from restricting the information subject to nondisclosure under the NSL law, we next consider the recipients' argument that the nondisclosure requirement in § 2709(c) is the sort of content-based restriction on speech which must have the procedural safeguards identified by the Supreme Court in *Freedman v. Maryland*, 380 U.S. 51.

The recipients argue that the NSL law's nondisclosure requirement is such a restriction because it is a content-based rule that "*forbid[s]* certain communications when issued in

---

[21] The recipients argue that the NSL law should be held to a higher standard than strict scrutiny. According to the recipients, a content-based restriction imposed by a system of prior restraint is permissible only if (1) the harm to the governmental interest is highly likely to occur; (2) the harm will be irreparable; (3) no alternative exists for preventing the harm; and (4) the restriction will actually prevent the harm. This argument is meritless. No Supreme Court or Ninth Circuit opinion has articulated such a test, nor do the three cases cited by the recipients support it. The brief per curiam opinion in *New York Times Co. v. United States* (*Pentagon Papers*) did not specify a test that should be applied to prior restraints. *See* 403 U.S. 713, 714 (1971). Further, neither *Nebraska Press Ass'n v. Stuart*, 427 U.S. 541 (1976), nor *Levine v. U.S. District Court*, 764 F.2d 590 (9th Cir. 1985), required the government to show that harm to a government interest (i.e., protecting a criminal defendant's Sixth Amendment rights) was highly likely to occur or that no alternative to a restraining order existed. Nor did either case suggest that a pretrial restraint is invalid unless it is certain to prevent the harm at issue. Rather, consistent with the application of strict scrutiny, these opinions considered the availability of *less restrictive* alternatives to a restraining order. *See Nebraska Press*, 427 U.S. at 563–64; *Levine*, 764 F.2d at 599–601.

advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550 (1993). In the absence of such a restriction, the recipients argue, they would have the opportunity to disclose the receipt of an NSL, subject to subsequent judicial review.

This argument is not entirely persuasive. As the Second Circuit noted, § 2709(c) limits certain speech in advance but "is not a typical example" of a regulation for which procedural safeguards are required. *John Doe, Inc. v. Mukasey*, 549 F.3d at 876. The Supreme Court has generally focused on two types of government schemes requiring safeguards: censorship schemes and licensing schemes. The Court has long held that schemes requiring a putative speaker to submit proposed speech to a governmental body, which is then "empowered to determine whether the applicant should be granted permission — in effect, a license or permit — on the basis of its review of the content of the proposed" speech, *Se. Promotions*, 420 U.S. at 554, "avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship system," *Freedman*, 380 U.S. at 58. The Court has applied this rule to censorship schemes requiring film exhibitors to obtain prior approval before showing a film, *see id.* at 52–53, requiring producers to obtain permission to show theatrical productions in municipal theaters, *Se. Promotions*, 420 U.S. at 554, allowing the postmaster to hold books sent through the mail pending a determination of obscenity, *Blount v. Rizzi*, 400 U.S. 410, 413–15 (1971), and seizing materials brought into the United States pending an obscenity determination by customs agents, *United States v. Thirty-Seven (37) Photographs*, 402 U.S. 363, 365–66 (1971), among other systems of censorship. The need for procedural safeguards in these cases derived from the principle that "a free society

prefers to punish the few who abuse rights of speech after they break the law than to throttle them and all others beforehand." *Se. Promotions*, 420 U.S. at 559. "[T]he line between legitimate and illegitimate speech is often so finely drawn that the risks of freewheeling censorship are formidable." *Id.*

In later years, the Supreme Court has extended the applicability of *Freedman*, holding that government schemes for licensing constitutionally permissible speech or communicative conduct also require procedural safeguards. *See Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 802 (1988) (requiring procedural safeguards in government schemes for licensing professional fundraisers to solicit money); *City of Littleton v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774, 776, 780 (2004) (requiring procedural safeguards in government schemes for licensing adult entertainment businesses); *see also FW/PBS*, 493 U.S. at 220, 228–30 (principal opinion of O'Connor, J.) (same); *Dream Palace v. County of Maricopa*, 384 F.3d 990, 1001 (9th Cir. 2004) (same). The safeguards required for licensing schemes are less extensive than those required in *Freedman* because they do "not present the grave dangers of a censorship system." *City of Littleton*, 541 U.S. at 783 (quoting *FW/PBS*, 493 U.S. at 228) (internal quotation marks omitted).

The NSL law does not resemble these government censorship and licensing schemes. It neither requires a speaker to submit proposed speech for review and approval, nor does it require a speaker to obtain a license before engaging in business. Rather, the NSL law prohibits the disclosure of a single, specific piece of information that was generated by the government: the fact that the government has requested information to assist in an investigation

addressing sensitive national security concerns, i.e., "to protect against international terrorism or clandestine intelligence activities." 18 U.S.C. § 2709(b)(1).   As the Second Circuit noted, "[u]nlike an exhibitor of movies," the recipient of a nondisclosure requirement "did not intend to speak and was not subject to any administrative restraint on speaking *prior to* the Government's issuance of an NSL." *John Doe, Inc. v. Mukasey*, 549 F.3d at 880 (emphasis added).   And unlike the operator of an adult entertainment business, the recipient of a nondisclosure requirement does not operate an enterprise where receiving government approval under the licensing scheme at issue "is the key to [its] obtaining and maintaining a business."   *FW/PBS*, 493 U.S. at 230.

Rather than resembling a censorship or licensing scheme, the NSL law is more similar to governmental confidentiality requirements that have been upheld by the courts.  *See, e.g.*, *Butterworth v. Smith*, 494 U.S. 624, 634–36 (1990) (upholding in part a law requiring witnesses to maintain the confidentiality of the grand jury process); *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 37 (1984) (upholding a restriction on disclosure of information obtained through pretrial discovery).   In *Butterworth*, for instance, the Court considered a Florida statute that "prohibit[ed] a grand jury witness from ever disclosing testimony which he gave before that body."  494 U.S. at 626.   While the statute could not constitutionally prohibit a witness from disclosing "information of which he was in possession before he testified before the grand jury," the Court did not invalidate that "part of the Florida statute which prohibits the witness from disclosing the testimony of *another* witness."  *Id.* at 632–33.   Similarly, the only information subject to nondisclosure under § 2709(c) relate to the NSL and its

contents — information of which a recipient was not in possession prior to the NSL's issuance. The Supreme Court has sometimes reviewed such governmental confidentiality restrictions under a framework akin to strict scrutiny, considering whether the state has the "highest form of state interest," and the restriction is "necessary to further the state interests asserted." *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 102 (1979); *see also United States v. Aguilar*, 515 U.S. 593, 605–06 (1995). On other occasions, it has applied a test closer to intermediate scrutiny, *see Rhinehart*, 467 U.S. at 32–34, in which it balanced the government's interest against that of the speaker's by considering factors such as whether the speaker obtained the confidential information from a government source and whether the speaker knew the information prior to the government action. *Compare id.* at 31–32 (noting that First Amendment concerns are lessened when the speaker learned the information only as "a matter of legislative grace" through a court's discovery process), *with Butterworth*, 494 U.S. at 632 (striking down a confidentiality restriction to the extent it restricted disclosure of information that was in the speaker's possession prior to his grand jury testimony). But the Court has not held that these sorts of government confidentiality restrictions must have the sorts of procedural safeguards required for censorship and licensing schemes.[22]

---

[22] Contrary to Chief Judge Murguia's concurrence, the Supreme Court does not refer to every law that bars speech in advance of its occurrence as a prior restraint. Conc. at 45. The Supreme Court has upheld the governmental confidentiality requirements discussed above, and of course, many other opinions uphold laws barring future speech, *see, e.g.*, *Holder v. Humanitarian Law Project*, 561 U.S. 1, 36 (2010) (upholding a law criminalizing communications that provide material support to a foreign terrorist organization); *Rust v. Sullivan*, 500 U.S. 173, 192–94 (1991) (upholding regulations barring certain federally funded

We need not, however, resolve the question whether the NSL law *must* provide procedural safeguards, because the 2015 NSL law in fact provides all of them. First, *Freedman* requires that "any restraint prior to judicial review can be imposed only for a specified brief period." *Thomas*, 534 U.S. at 321. A speaker must "be assured, by statute or authoritative judicial construction, that the censor will, within a specified brief period, either issue a license or go to court." *Freedman*, 380 U.S. at 58–59. The 2015 NSL law readily provides this assurance: a recipient may immediately notify the government that it desires judicial review, and the recipient is guaranteed by statute that the government will "go to court" within 30 days of receiving notice by "apply[ing] for an order prohibiting the disclosure of the existence or contents" of the NSL at issue. 18 U.S.C. § 3511(b)(1)(B). This 30-day period is both "specified" and "brief." *See John Doe, Inc. v. Mukasey*, 549 F.3d at 883 (considering a "30-day period in which the Government considers whether to seek judicial review"); *cf. Thirty-Seven (37) Photographs*, 402 U.S. at 370–74 (plurality opinion) (holding that a 14-day limit on the initiation of judicial proceedings was sufficient under *Freedman*). Accordingly, we reject the recipients' argument that the 2015 NSL law fails to provide this first safeguard.

Second, *Freedman* requires that "expeditious judicial review" must be available. *Thomas*, 534 U.S. at 321. The 2015 NSL law's direction to reviewing courts, that they "should rule expeditiously" on any petition by a recipient or

---

facilities from advocating abortion as a method of family planning). Although these cases considered laws preventing speech in advance of its occurrence, Conc. at 45, the Supreme Court did not use the term "prior restraint" nor require the procedural safeguards set forth in *Freedman*.

application by the government regarding the validity of a nondisclosure order, 18 U.S.C. § 3511(b)(1)(C), provides this safeguard. The recipients contend that this directive is insufficient because Congress should have imposed a specific time limit. Again, we disagree. While neither party may control how quickly a case moves through a court's docket, we "presume that courts are aware of the constitutional need to avoid undue delay result[ing] in the unconstitutional suppression of protected speech." *City of Littleton*, 541 U.S. at 782 (alteration in original) (internal quotation marks omitted); *see also Dream Palace*, 384 F.3d at 1003 (referring to *City of Littleton*'s "presumption that . . . courts function quickly enough, and with enough solicitude for the First Amendment rights of [speakers]"). Neither *Freedman* nor any other Supreme Court decision requires that judicial review be completed in a specified time frame, such as the 60 days suggested by the Second Circuit in *John Doe, Inc. v. Mukasey*, *see* 549 F.3d at 879. The courts' duty to "exercise [their] powers wisely so as to avoid serious threats of delay-induced First Amendment harm," *City of Littleton*, 541 U.S. at 782, assures us that judicial proceedings will move sufficiently rapidly to safeguard an NSL recipient's First Amendment rights.

Finally, *Freedman* requires that the government "bear the burden of going to court to suppress the speech" and "the burden of proof once in court." *Thomas*, 534 U.S. at 321. The recipients argue that § 3511(b)(1)(B)'s notice procedure is insufficient because a nondisclosure requirement may remain in place without judicial review if the recipient does not notify the government that it wishes to have a court review the order and if the recipient fails to bring its own petition to modify or set aside the nondisclosure requirement. We reject this argument. *Freedman* focused on minimizing

the burden to the film exhibitor to "seek judicial review" of the state's denial of a license; it did not focus on which party bore the initial burden. 380 U.S. at 58–59. Here, the burden on a recipient is de minimis, as the recipient may seek judicial review simply by notifying the government that it so desires. *Freedman* does not require that the government provide judicial review of confidentiality provisions for the benefit of individuals who do not wish to speak.

The recipients further argue that the NSL law "does not sufficiently place the burden of proof on the government" because the "reason to believe" and "may result" standards are insufficiently stringent. We reject this argument, too. As the Second Circuit held, and as we have already discussed, the government must certify to the reviewing court and establish to the court's satisfaction, that there is a good reason to believe that absent nondisclosure, one of the enumerated harms is reasonably likely to result. *John Doe, Inc. v. Mukasey*, 549 F.3d at 875. Since the government has prohibited the recipient from disclosing the fact that it has even received an NSL, certification and proof are required to impose a nondisclosure requirement on both the fact of receipt and the contents of the NSL. Because the government must sufficiently certify and establish that both disclosures would likely result in one of the four enumerated harms, these requirements place the burden of proof on the government and thereby provide *Freedman*'s third safeguard.

Because the NSL law provides the three procedural safeguards set forth in *Freedman*, we reject the recipients' argument that the NSL law is an invalid prior restraint on *Freedman* grounds.

VI

We conclude that § 2709(c)'s nondisclosure requirement imposes a content-based restriction that is subject to, and withstands, strict scrutiny. We further hold that, assuming the nondisclosure requirement is the type of prior restraint for which the *Freedman* procedural safeguards are required, the NSL law provides those safeguards. The nondisclosure requirement in the NSL law therefore does not run afoul of the First Amendment.

**AFFIRMED.**

---

MURGUIA, Chief Judge, concurring:

I agree that the NSL law's nondisclosure requirement—which prohibits an electronic communication service provider from disclosing that the Federal Bureau of Investigation has sought or obtained information from the provider pursuant to an administrative subpoena, 18 U.S.C. § 2709(c)(1)(A)—does not violate the First Amendment. The law passes constitutional muster because it is narrowly tailored to serve compelling national security interests *and* because it provides the government "narrow, objective, and definite standards" which limit its ability to prohibit disclosure as well as sufficiently robust procedural safeguards, including prompt judicial review. *See id.* § 2709(c)–(d); *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 150–51 (1969); *Freedman v. Maryland*, 380 U.S. 51, 58–60 (1965). I write separately, however, to clarify important doctrinal assumptions that underlie my concurrence and inform the opinion's reasoning.

*First*, I assume that the nondisclosure requirement is a prior restraint.  I make this assumption because "[t]he term prior restraint is used 'to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur.'" *Alexander v. U.S.*, 509 U.S. 544, 550 (1993) (citation omitted).  The opinion, as a general matter, embraces this assumption and never concludes otherwise.  Op. at 44 ("We further hold that, assuming the nondisclosure requirement is the type of prior restraint for which the *Freedman* procedural safeguards are required, the NSL law provides those safeguards.").  Nevertheless, the opinion at times appears to back away from this underlying premise.  For example, the opinion states that "[t]he NSL law does not resemble . . . government censorship and licensing schemes," *id.* at 38, which are prior restraints, *see, e.g.*, *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 559–60 (1975).  Similarly, the opinion notes that "the NSL law is more similar to governmental confidentiality requirements," Op. at 39, which are subject to varying standards of scrutiny and do not require the procedural safeguards that typically accompany prior restraints, *see id.* at 39–40.  This language is unnecessary to the decision and may lead to misinterpretation of the opinion.

*Second*, when a statute constitutes a prior restraint, we apply a heavy presumption against its constitutionality.  *See Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963) ("Any system of prior restraints of expression comes to [court] bearing a heavy presumption against its constitutional validity.").  As such, the government "carries a heavy burden of showing justification for the imposition of such a restraint." *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971).  I apply this heavy presumption because I assume the nondisclosure requirement constitutes a prior restraint.

Here, the NSL law overcomes the presumption through its nondisclosure standards and procedural safeguards.  *See* 18 U.S.C. § 2709(c)–(d).    Absent certain enumerated exceptions, the government may only prohibit disclosure if it certifies that disclosure may endanger national security; interfere with a criminal, counterterrorism, or counterintelligence investigation; interfere with diplomatic relations; or endanger the life or physical safety of a person. *Id.* § 2709(c)(1)–(2).    Furthermore, a nondisclosure requirement is subject to expeditious judicial review.  *See id.* §§ 2709(d), 3511(b)(1)(C).

In sum, I am satisfied that we have evaluated the NSL law under the applicable, exacting standards, and I am in agreement with the opinion that the law withstands constitutional scrutiny.  I write separately merely to make explicit that our conclusions rest on the assumption that the NSL law's nondisclosure requirement is a prior restraint of speech.